**FEDERAL MORTGAGE CO. et al. v. HAWKINS.**

**No. 13385.**

Court of Civil Appeals of Texas. Fort Worth.

May 22, 1936.

Rehearing Denied June 19, 1936.

Owsley & Owsley, of Denton, John F. Murphy and Thompson, Knight, Baker & Harris, all of Dallas, for appellants.

Geo. M. Hopkins, of Denton, and Lyle Saxon and J. E. Burkholder, both of Dallas, for appellee.

BROWN, Justice.

On May 20, 1927, appellee, Mrs. Mattie Hawkins, a widow, being indebted to the National Loan & Investment Company in the principal sum of $3,492.87, which is represented by a first lien on appellee's home property in the city of Denton, Tex., borrowed from appellant Federal Mortgage Company the sum of $3,800 and made, executed, and delivered to such appellant on such date two promissory notes, the first being for the principal sum of $3,800. This note contains the following provisions:

That she promises to pay the principal sum of $3,800, "together with interest thereon as agreed," in installments of 120 monthly installments for $48.75 each, the first installment being due July 1, 1927, and that "out of each of the first maturing 25 of said installments, the sum of $19.00 shall be credited hereon and 95 next maturing installments for $48.75 each shall be credited hereon. The payment of all of said installments by the payment of each thereof on its due date, without default and without prepayment, shall be payment in full of the loan and the interest thereon."

The note further provides that all sums due which are to be credited on the note, if not paid when due, shall thereafter bear interest at the rate of 10 per cent. per annum until paid; and that, if default be made in the payment of any installment due, or any part thereof, for a period of twenty days after its maturity, "then the unpaid principal of the loan and all interest thereon accrued shall, at the election of the legal holder hereof, become immediately due and payable in full."

It further provides that, in the event of default in the payment or payments, and in the event of accelerated maturity of the

loan and interest, the maker shall, "in lieu of the monthly installments provided, pay immediately, without grace, in satisfaction of the loan and interest, a sum equal to the principal of the loan made and also interest thereon computed at the rate of ten per cent per annum, with the interest payable in monthly installments, and interest at ten per cent per annum on any interest matured and in default—less any payments made credited as of the date of such payments— and I shall not be called upon to pay, as principal and interest of the loan, any greater sum."

This note recites that it is secured by a first lien on the premises covered by the deed of trust made on even date with the note.

The last paragraph of the note reads as follows: "In connection with this note, and representing a part of the total amount to be paid on this loan, and interest, there is this date executed between the parties hereto a second and inferior obligation for the sum of $743.75 payable in monthly amounts of $29.75 each, as therein specified."

The second note is for $743.75, and the maker promises to pay such sum as follows: "Out of each of the first 25 maturing monthly installments hereinbelow described, the sum of Twenty-nine and 75/100 Dollars, until the total sum hereof be fully paid. Any and all sums owing hereunder which shall not be paid when due, shall bear interest from maturity until paid at the rate of ten per cent per annum, and such interest shall be payable in monthly installments."

The note further provides that it is secured by a second lien, as shown by the deed of trust of even date. The note contains the following provision: "This obligation is given to evidence in part my promise to repay a loan of $3,800.00 with interest thereon in 120 monthly installments, which monthly installments to be paid are 120 installments of $48.75 each; the application of part of such monthly undertaking is evidenced by obligation constituting a first and preferred lien; the application of the balance of such obligation is evidenced hereby, and is a second and inferior lien— each application and said obligation being secured by the trust deed above mentioned. Out of each of the first 25 of said installments there shall be applied on the first obligation the sum of $19.00 per month, and all the remaining installments shall be applied entirely on said first lien obligation."

This note contains provisions with respect to default and accelerated maturity of the loan and interest and the sum necessary to satisfy the loan and interest, and the identical provisions contained in the first lien note.

The deed of trust given to secure the payment of these two notes contained the following provisions:

"This conveyance is intended, however, as a trust for better securing the payment of a loan this day made by Federal Mortgage Company, of Dallas, Texas, to Mrs. Mattie Hawkins, a widow, in the principal sum of $3800.00, which said loan, with the interest thereon to become due as agreed, said Mrs. Mattie Hawkins, a widow, has contracted and agreed to pay in 120 monthly installments of $48.75 each, the first installment of which shall fall due on the first day of July next hereafter, and another of which shall fall due on the first day of each succeeding month thereafter until all of said installments be fully paid. · .

"Said payments evidenced by two written obligations, of even date hereof, on a first and superior obligation, a note of $3,800.00, and interest thereon, which provides that out of each of the first maturing 25 monthly installments as paid, the sum of $19.00 shall be credited thereon, and all of the last maturing 95 of said monthly installments as paid shall be credited thereon, the foregoing obligation constituting a first and preferred lien, the other obligation calling for the payment of $29.75 per month out of each of said 25 installments first maturing as paid, said obligation, if carried out, calling for an aggregate payment of $743.75 and being a second and inferior lien to the note above mentioned; each obligation provides for interest on any matured and unpaid amounts owing at the rate of ten per cent per annum, such interest to be due and payable pro rata monthly, and providing that in no event shall the borrower be charged or pay a greater sum than the principal of the loan, with such ten per cent per annum interest so payable pro rata in installments monthly; each of said obligations providing for an accelerated maturity and for optional prepayment of the loan and interest accrued thereon in case of default of any payment, and each obligation providing for the payment of ten per cent as attorney's fees in the event of default and maturity and collection by a suit or by attorney.

"The lien hereby and herein created shall be and constitute a first and preferred lien to secure the note above named according to its face, tenor and effect, and the said

lien as security for the second obligation named, shall be subordinate and inferior. * * *

"But in case of any failure or default on Grantor's part to keep or to perform any of the covenants or agreements herein contained, or in case of the occurrence of default in the payment of any of said installment payments, or any other obligation secured hereby, at the option of the holder of said indebtedness, the entire debt unpaid principal and interest shall become immediately due and payable, and grantors do hereby fully authorize and empower the said trustee, or his successors hereunder, and it is hereby made his or their special duty, at the request of the said beneficiary or other legal holder of said indebtedness, at any time after failure or default aforesaid, to sell the property hereby conveyed, at public vendue. * * *"

As to the application of the payment of the proceeds, the following provision is made: "Third, to the payment of said indebtedness, so in failure or default, in addition to said trustee's fees aforesaid, and also the taxes and assessments, or any payments made aforesaid, with interest."

The first lien note for $3,800 was sold to appellant Equitable Trust Company.

Mrs. Hawkins made 74 payments of $48.75 each, aggregating the sum of $3,607.50, and on January 12, 1934, brought suit in the district court of Denton county, Tex., against the Federal Mortgage Company, the Equitable Trust Company, the Guilford Mortgage Company (all corporations), and Edward T. Moore, trustee named in the deed of trust executed by her, all being appellants here, setting up her ownership of the lands and improvements in controversy, the contract with the Federal Mortgage Company for the loan by it to her, the execution of the two notes and the deed of trust securing the same, alleging that the contract was and is usurious, in that she was required thereunder to pay a sum far greater than the lawful rate of interest during the first 25 months of the life of the loan, and that she paid, and there was collected under such contract from her, interest in excess of 15.3 per cent per annum on her loan during and for the first 25 months of the life of the loan.

Mrs. Hawkins further alleged that she did not receive the full sum of $3,800 on the loan, and she prays that all sums paid by her and received by the several defendants be credited on the principal amount of her indebtedness, and that she have judgment for the remainder, but that, if the amount of her payments are not sufficient to cover the full amount of her indebtedness, she then tenders and offers to pay any unpaid balance, without interest, and she prays for an injunction restraining the defendants from selling her property under the usurious contract, and that all clouds cast upon her title by reason of the usurious transactions be canceled and held for naught. All of these allegations appear in the first amended original petition, filed March 12, 1935.

All of the defendants, appellants herein, filed answers, which are practically identical. They contend that the contract made with Mrs. Hawkins is not usurious because it appears that the $743.75 obligation was only to be paid if the contract was carried out, contending that this means if all of the loan obligations and loan installments to be paid by Mrs. Hawkins were met; and, further, that the contract is not usurious because it provides that in no event shall the borrower be charged or pay a greater sum than the principal of the loan, with 10 per cent per annum interest, payable in installments.

Appellant Guilford Mortgage Company answers that it has only acted as the authorized agent of the appellant Equitable Trust Company. All appellants contend that the contract is not usurious, in that, if Mrs. Hawkins makes 120 monthly payments of $48.75 each, such sums so paid by her will amount to a repayment of the $3,800 borrowed, together with 9.3 per cent per annum interest covering the life of the loan.

Appellant Equitable Trust Company, in addition to its answer, filed a cross-action, asserting that Mrs. Hawkins is in default of her monthly installments and prays for the recovery of the balance alleged to be due, with a foreclosure of its lien. And, by way of a second count in the cross-action, urged only in the event the court finds the loan contract is usurious, it prays for judgment of the debt and foreclosure against Mrs. Hawkins by reason of having become the lawful owner and holder of the debt owing by Mrs. Hawkins to the National Loan & Investment Company, together with the lien securing the same, and asks for foreclosure of such lien.

Mrs. Hawkins pleads the statute of limitation of four years against the last-mentioned cross-action.

The case was tried to a jury, and, at the close of the taking of evidence, all parties requested peremptory instructions, which were refused, and the court submitted five special issues to the jury, in substance, and answered, as follows:

(1) Was the note for $743.75 an interest note? Answer: Yes.

(2) Does the jury find that no credits were made on the principal of the first lien note during the first 25 months of the life of the loan? Answered: Yes.

(3) Was the loan plan used by the Federal Mortgage Company a scheme, device, and a subterfuge for collecting interest in excess of 10 per cent per annum for the first 25 months of the life of the loan? Answered: Yes.

(4) Did the Federal Mortgage Company appropriate interest out of the monthly payments in excess of 10 per cent. per annum during the first 25 months of the loan? Answered: Yes.

(5) Is it a fact that Mrs. Hawkins did not receive either in cash or credit the proceeds of a draft in the sum of $299.59? Answered: Yes.

After the payment to the National Loan & Investment Company of what was owing to it, the difference is shown to be $299.59, and this sum is represented by a draft made payable to Mrs. Hawkins, or her order, and shows to have been indorsed by her, with no other indorsement thereon excepting that of the bank in which she, at that time, admits she did business in Denton.

Many objections were made to the charge of the court by the several defendants, appellants here, and, taking the view that we do of this case, we shall not notice all of them, nor shall we discuss the many assignments of error.

All parties filed motions for judgment and all were overruled, excepting Mrs. Hawkins' motion.

On July 19, 1935, the trial court entered judgment, in which he found that the contract was usurious; that only the sum of $3,500.41 was actually advanced and loaned by the Federal Mortgage Company to Mrs. Hawkins, and that Mrs. Hawkins has actually paid the sum of $3,607.50; that the Equitable Trust Company elected to pursue its remedy and rights under the deed of trust and notes in controversy, and had abandoned all right to recover under the contract made by Mrs. Hawkins with the National Loan & Investment Company; that Mrs. Hawkins, having paid the sum of $107.09 more than she actually received, is entitled to a cancellation of the deeds of trust and notes and to have all clouds cast upon her title removed; and that she is entitled to recover from the Equitable Trust Company the said sum of $107.09, with interest at the rate of 6 per cent. per annum from the date of the judgment, and the judgment so provides and stipulates, and further provides that the Equitable Trust Company and the Guilford Mortgage Company take nothing on their cross-action against Mrs. Hawkins.

All the defendants excepted to the judgment.

The amended motion for a new trial, containing 112 separate and distinct paragraphs, was overruled on July 19, 1935, exception duly taken, and notice of appeal given.

■ The record indisputably shows that Mrs. Hawkins actually received from the Federal Mortgage Company the sum of $3,800. Such testimony as was given by her concerning the draft for $299.59, made payable to her order and indorsed by her, in which she merely testifies that she had no recollection of the transaction or of receiving the proceeds of such draft, amounts to nothing more than negative testimony, and, in the face of the written evidence, her acknowledged indorsement, and the positive testimony of other witnesses in connection with this draft, we must and do find that the evidence touching the issue of whether or not Mrs. Hawkins received the proceeds of this draft is wholly insufficient to raise the issue of no receipt of same by her, and the finding on the part of the jury that she did not receive such sum of money cannot be permitted to stand. The assignments of error touching this issue and the judgment of the court thereon are by us sustained. We find from the evidence that Mrs. Hawkins borrowed from the Federal Mortgage Company the sum of $3,800 and received such sum by said mortgage company paying to the National Loan & Investment Company the indebtedness owing by her to it at the time of making the loan and by paying to Mrs. Hawkins the said sum of $299.59 in cash. Southern Surety Co. v. Hidalgo County, 125 Tex. 390, 83 S.W.(2d) 313, and authorities cited.

■ We now come to the question of whether or not this is a usurious contract.

Mrs. Hawkins only borrowed $3,800, but she executed two notes, one for $3,800 and

one for $743.75. It is significant to us that neither of these notes mentions any stipulated amount or per cent. of interest which the borrower is to pay. The principal note provides that the maker will pay the principal sum "together with interest thereon as agreed," and provides that the maker shall make 120 monthly installments, each in the sum of $48.75; and that out of the first maturing 25 of such installments only the sum of $19 shall be credited on the larger note, but that all of the last 95 maturing installments shall be credited thereon; and in the body of this note there is specifically tied in the second and inferior obligation which Mrs. Hawkins executed for the sum of $743.75, which is declared to be "payable in monthly amounts of $29.75 each as therein specified." And the smaller note is referred to in the larger note as "representing a part of the total amount to be paid on this loan and interest."

The deed of trust does not mention the rate of interest which the loan bears, but, taking the three instruments as constituting one single transaction, it occurs to us that the larger note represents the principal sum of the loan, while the smaller note represents that portion of the interest which is to be collected over a period of the first 25 months during the life of the loan. The truth is, this represents that portion of the interest which appellant Federal Mortgage Company desired to collect as its profits on the transaction, seeing that it sold the larger note to the Equitable Trust Company and, under the provisions of the contract, which is made plain to such assignee, the Federal Mortgage Company was to pay to it out of the first 25 monthly installments only the sum of $19 per month. This is exactly 6 per cent. per annum interest on the larger note.

We are not confronted with the situation whereby the holder of a part of the contract to pay interest on the part of the borrower has in its hands an obligation that is spread over the entire period of the loan. If we did have, then this would not be a contract tainted with usurious interest, as is strenuously argued by all appellants and as is found by computation. The payment of $48.75 per month for a period of 120 months will repay the original loan of $3,800 at a rate of about 9.3 per cent. interest per annum on the amortization plan. But the holder of the small note, under the very terms of the contract, was anxious to get, and required the borrower to pay, all of its interest for the use of the money for a period of 120 months, within the first 25 months of the life of the loan, and it thus collected during the 25-month period interest from Mrs. Hawkins at the rate of about 9.4 per cent. So, during the first 25 months of the life of the loan, Mrs. Hawkins paid the Federal Mortgage Company interest at the rate of 9.4 per cent. per annum, and paid to the Equitable Trust Company interest at the rate of 6 per cent. per annum, making a total of interest exacted from her under the very terms and provisions of the contract during the first 25 months at the rate of 15.4 per cent. per annum. We hold that the contract is tainted with usury. Dallas Trust & Savings Bank v. Brashear (Tex.Com.App.) 65 S.W.(2d) 288.

It is strenuously urged that both notes containing the provision that, if default is made and the maturity of the loan and interest is accelerated, Mrs. Hawkins shall pay in satisfaction of the loan and interest "a sum equal to the principal of the loan made, and also interest thereon computed at the rate of 10% per annum, with the interest payable in monthly installments, and interest at 10% per annum on any interest matured and in default—less any payments made credited as of the date of such payments—and I shall not be called upon to pay as principal and interest of the loan, any greater sum," purges the contract of any apparent usury.

In considering this provision further, in the two notes, we are of the opinion that it simply means to say, "while this contract on its face shows that it is tainted with usury which is exacted during the first 25 months of the life of the contract, nevertheless if the borrower makes default and for any reason given the lender accelerates the maturity, the lender will then charge only 10% interest and will take all the payments that have theretofore been paid and credit them on the principal indebtedness and all interest accrued from the date of the loan at the rate of 10%." To us this is tantamount to saying: "We are charging usurious interest, but if anything happens, we will apply it on the contract just as if we had charged no more than 10% per annum interest thereon from the beginning." We do not believe that any such provision purges the contract of the usury provided for therein.

We see nothing in the contention that Mrs. Hawkins is not entitled to have all the payments made by her applied to the orig-

inal debt contracted by her on the theory that the Equitable Trust Company owns the larger note, and that the Federal Mortgage Company owned and kept the smaller note, and that therefore the payments made to one has no relationship to the other. These two notes are too closely knitted for any such contention to be sound. This is not a situation where there are several notes representing principal and interest and the notes fall into the hands of several holders and each holder simply collects from the borrower that which is stipulated for in its particular portion of the contract and where the payments are made by the borrower separately. This is a contract where the borrower promises to pay each month, for 120 months, the sum of $48.75, and out of which sum only $19 is to be applied on the larger note each month for 25 months, and $29.75 is to be applied each month on the smaller note for 25 months, and thereafter the entire installment of $48.75 per month is to be applied on the larger note.

To our way of thinking, it is all one transaction, in which Mrs. Hawkins has agreed to pay, and has paid, one payment per month for 74 months of $48.75, and the arrangement whereby the Equitable Trust Company, assignee of the Federal Mortgage Company, and the Federal Mortgage Company, having split up the payments, cannot deprive Mrs. Hawkins of her right to have the payments made by her applied to the discharge of the loan made to her.

A. W. Miller, who was employed by the Federal Mortgage Company at the time this loan was made, testified that the $3,800 note represented the principal sum loaned, and the $743.75 note represented the profit to the Federal Mortgage Company as its interest, and that it was the plan of the Federal Mortgage Company to issue bonds covering the principal of the loan; that this was done; and that the Federal Mortgage Company made the collections each month and disbursed the funds, applying $29.75 of each monthly installment for the first 25 months to the discharge of its note for $743.75, and $19 per month during such period as interest on the larger note.

The record discloses that the principal sum of the large note was, under the plan, never reduced in any sum until the twenty-sixth monthly payment was made by Mrs. Hawkins.

Mrs. Hawkins, having paid the sum of $3,607.50 and having borrowed $3,800, and the contract being one tainted with usury, the judgment is reformed so that judgment is here entered for the Equitable Trust Company against Mrs. Mattie Hawkins in the sum of $192.50, together with a foreclosure of its said lien on the premises in question. In all other respects, the judgment of the trial court is affirmed.

The costs of this appeal are taxed against Mrs. Mattie Hawkins.

Reformed and affirmed.