SOUTHERN SURETY COMPANY ET AL. (A. T. LILES ET AL.) V. HIDALGO COUNTY.

No. 6346. Decided June 12, 1935.
(83 S. W., 2d Series, 313.)

*Jno. T. Suggs*, of Denison, for plaintiffs in error.

A county auditor having no right or authority under the statute to endorse or sign the name of a county on a check or warrant, and if so endorsed bank is not authorized to pay same, nor is said auditor liable for money so paid. Hamilton v. Ward, 4 Texas, 356; Brown v. Sneed, 77 Texas, 476, 14 S. W., 248.

*Douglas & Black*, of San Antonio, and *Griffin, Kimbrough & Cox*, of McAllen, for defendant in error.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

In April, 1929, O. T. Liles, one of the defendants in error, became County Auditor of Hidalgo County. Bond was fur-

nished by Southern Surety Company of New York, the other defendant in error, in the sum of $5000, conditioned that O. T. Liles would faithfully perform and discharge all duties required of him by law as County Auditor. At that time Brooks County was indebted to Hidalgo County in the sum of $5560. On September 28, 1929, the County Clerk of Brooks County, acting under an order of the Commissioners' Court of that county, drew a warrant on its county treasurer for the amount of the indebtedness. The warrant directs the treasurer "to pay to Hidalgo County or bearer the sum of $5560 and no/100 dollars out of the indebtedness fund, being the amount allowed by the Commissioners' Court of said county at its Special September Term, 1929, for indebtedness due Hidalgo County." The warrant was duly mailed to the county clerk of Hidalgo County at Edinburg the county seat. The Edinburg State Bank and Trust Company was the county depository of Hidalgo County. The warrant was presented to the depository bank for payment on October 21, 1929, and was paid on that date. It was endorsed on the back thereof "Hildalgo County—O. T. Liles, Auditor." Such was the endorsement on which the warrant was cashed. It was then sent by the depository bank through banking channels to the County Treasurer of Brooks County, who paid it on October 4. Beginning in March and ending in August, 1931, the auditing firm of Ernst & Ernst made an audit of Hidalgo County records. In the course of the audit the item of the Brooks County indebtedness was noted. Further investigation disclosed that while Brooks County had paid the warrant drawn covering the indebtedness, the proceeds had never been deposited to Hidalgo County's credit; nor had the item been credited or entered on any of the county's records, as required by law. In due time Hidalgo County, acting through its Commissioners' Court, joined by the County Treasurer of the county, filed suit against the said Liles and Surety Company, plaintiffs in error. As against the defendant Liles the county sought recovery in several counts. The allegations of the petition predicated liability against him in separate counts, both for money had and obtained from the county in the manner above stated, and for damage sustained by the county on account of his alleged wrongful acts. It was alleged also that Liles as county auditor was obligated to carry out and perform the duties of his office as auditor as prescribed by law, and the nature of his duties, his failure to faithfully perform the same, and the loss sustained by Hidalgo County in consequence thereof. The liability of the surety company was predicated

upon the failure of Liles to faithfully carry out and perform his official duties and the loss sustained by the county by reason thereof. Trial was had without a jury. Judgment was in favor of plaintiffs in error that Hidalgo County take nothing against either Liles or the surety company. On appeal the Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of the county against both plaintiffs in error. 50 S. W. (2d) 924. Upon application the Supreme Court granted the writ, expressing doubt as to the liability of the surety.

The office of County Auditor is highly important under our scheme of local self-government. His selection is removed as far as possible from direct political influence by requiring his appointment at the hands of the district judges of the county. The statutory qualifications and oath prescribed for the incumbent of this office are exceptional. He must be of unquestionable good moral character and intelligence, thoroughly competent in business details. He is required to take the usual official oath of office, and also an additional oath, in writing, stating he is in every way qualified under the provisions and requirements of the law relating to his office, the positions of public trust or private trust he has theretofore held, and the length of service under each. He is also required to include in his additional oath that he will not be personally interested in any contract with the county. Articles 1648-9 R. S., 1925. Article 1651 provides that the auditor shall have "general oversight of all the books and records of the officers of the county, district or State, who may be authorized or required by law to receive any money * * * for the use of, or belonging to the county; and shall see to the strict enforcement of the law governing county finances." Article 1653 provides "he shall have continual access to and shall examine all books, accounts, reports, vouchers and other records * * * relating to the finances of the county * * * and shall inquire into the correctness of the same." All reports and collections of money for the county required to be made to the Commissioners Court are required to be carefully examined and reported on by him. Article 1654. He is required to "examine fully into the condition of, or inspect and count the cash in the hands of, the County Treasurer, * * * and shall see that all balances to the credit of the various funds are actually on hand in cash." Article 1655. Article 1657 reads:

"All deposits that are made in the county treasury shall be upon a deposit warrant issued by the county clerk in triplicate; said warrants shall authorize the treasurer to receive the

amount named, for what purpose, and to which fund the same shall be applied. The treasurer shall retain the original; and the duplicate shall be signed and returned to the county clerk for the county auditor and the triplicate signed and returned to the depositor. The auditor shall then enter same upon his books, charging the amounts to the county treasurer and crediting the party depositing same. The treasurer shall not, under any circumstances, receive any money in any other manner than that named herein."

Article 1663 makes it his duty specifically to require all persons who have received money belonging to the county, or have the disposition or management of any of the property of the county, to render statements to him. The succeeding article provides "he shall keep a general set of books showing all of the transactions of the county relating to accounts, contracts, indebtedness of the county, and its receipts and disbursements of all kind, and shall make tabulated reports of said funds and accounts for each regular meeting of the Commissioners' Court." It is made his duty under the provisions of Article 1656 "to prescribe and prepare the forms to be used by all persons in the collection of county revenues, funds, fees and all other moneys, and the mode and manner of keeping and stating their accounts, and the time, mode and manner of making their reports to the auditor * * *." It is further provided in this connection that "he shall have power to adopt and enforce such regulations not inconsistent with the constitution and laws, as he may deem essential to the speedy and proper collection, checking and accounting of the revenues and other funds belonging to the county."

The foregoing resume of the nature and duties of the office of county auditor is made for the purpose of showing not only what the statutory duties incumbent upon him are, but also as reflecting the power conferred upon him by the legislature, and his obligations in consequence thereof, in the matter of safeguarding county funds.

1   It is contended by plaintiffs in error that there is no evidence in the record that any funds belonging to Hidalgo County ever came into Liles' hands, and that consequently he is not liable. The record does not support the contention. The warrant itself is in evidence marked "paid." The only endorsement on the warrant is "Hidalgo County—O. T. Liles, Auditor." It is a well recognized custom in banking and commercial circles that both order and bearer instruments presented to banks for payment are required to be endorsed by the person receiving pay-

ment. The evidence is undisputed that the endorsement was made in the handwriting of O. T. Liles. Liles did not testify in person at the trial but his written deposition is in evidence taken at the instance of the county. He stated in response to one of the interrogatories as to whether the endorsement was in his handwriting, and whether he wrote it, that it looked like his handwriting, but that he had no recollection of writing it. His testimony was wholly negative and to the effect that he had no recollection of the transaction or of receiving the money. The warrant was paid and paid on the endorsement of Liles as auditor. This is sufficient to make a prima facia showing that the money was received by Liles, in the absence of any testimony indicating that it was received by some person other than him.

In Pierce v. Baker, 238 S. W., 699, 248 S. W., 439, 259 S. W. (Com. App.), 921 the trial court submitted an issue inquiring whether the note in question had been paid. The court in connection with this issue gave a special instruction to the effect that the question should be answered in the negative unless the defendant had produced a preponderance of the evidence on the issue. Defendant offered in evidence a release reciting payment. A great deal of evidence was introduced tending to show the release was executed through mistake, and that the note was not in fact paid. The Supreme Court, speaking through the Commission of Appeals reversed and remanded the case (259 S. W., 921) on account of the erroneous special instruction. Judge Chapman, speaking for the Commission, says:

"When the plaintiffs and defendant had rested in chief, if no other evidence had been offered, the defendant would have been entitled to an instructed verdict in his favor, the release of the note being prima facie proof of its payment."

2 There is no testimony in the record indicating that the money on the warrant was received by any person other than Liles. While he replied to one of the written interrogatories, "I have stated that the proceeds did not come into my possession," the manner of his having so stated was to say he had no recollection of having come into the possession of the warrant, or of any transaction in connection therewith. After answering that the endorsement looked like his writing he answered all other inquiries pertaining to the warrant that he did not know, or he had no recollection, or definite recollection, concerning the receiving of payment of the warrant or of writing his endorsement thereon. His testimony as to this matter was wholly negative, and without probative force. No testimony

being offered tending to show the proceeds were paid to any other person, a prima facie case was established against him to the effect that he came into possession not only of the warrant, but the proceeds of the warrant. Baker v. Pierce, supra; Clark v. Hills, et al., 67 Texas, 141, 2 S. W., 356; S. W. Bell Tel. & Tel. Co. v. Luckett, 60 Texas Civ. App., 117, 127 S. W., 856; Dennis v. Sanger, 15 Texas Civ. App., 411, 39 S. W., 997; 21 R. C. L., secs. 133, 136, pp. 120, 122. Judgment was therefore correctly rendered against Liles by the Court of Civil Appeals.

3 This leaves for determination the question of the liability of the surety company. The proceeds of the Brooks County warrant came into Liles' hands as auditor. Whether through violation of law or dereliction of his official duty, he procured possession of the warrant and its proceeds; and it was his duty as auditor to see that the proper fund of the county received credit for same and to see that entries were made upon the county records reflecting their proper handling and disposition. The provisions of article 1656 clothed him with power to adopt and enforce such regulations as were essential to the speedy and proper accounting of all funds belonging to the county. He was charged by law with knowledge of how receipt of the funds could be procured from the county treasurer. Art. 1657. The fact that the county's funds were in his hands did not take from him power to make, or cause to be made, proper accounting to the county. His statutory duty was plain to cause proper entries to be made upon the books of the county, and upon deposit of the funds to charge the same to the county treasurer, crediting the amount to the party depositing same. Arts. 1656-7. It was his duty thereupon to make a report to the Commissioner's Court showing receipt by the county of this money. Art. 1665. His failure to do any of these things constitutes a flagrant violation of the condition of his bond to faithfully perform the duties required of him by law. His acquiring possession of the county's funds in the manner stated, together with his failure to cause proper accounting for same and make report thereof, was such conduct with respect to his official duties as to constitute malfeasance in office. Certainly this is true in the absence of any showing, or attempted showing, of justification on his part for such failure. Holliman v. Carroll, 27 Texas, 23, 84 Am. Dec., 606; King v. Brown, 41 Texas Civ. App., 588, 93 S. W., 1017, Id., 100 Texas, 109, 94 S. W., 328; Lammon et al. v. Feusier et al., 111 U. S., 18, 28 L. Ed., 337, 4 Sup. Ct., 286; Skagit

County v. Amer. Bonding Co. of Baltimore, 59 Wash, 8, 109 Pac., 199; Hall v. Tierney et al., 89 Minn., 407, 95 N. W., 219.

Assistant Cashier Hearne testified that prior to the date the warrant was presented to the bank he had been dealing with county funds there in the depository under the direction of Mr. Liles and had had actual transactions with the county's funds under Liles' direction. Clearly Liles' transaction with the depository bank was had by virtue of his office, and in view of his subsequent acts, constituted official malfeasance. In Holliman v. Carroll, supra, the court held that the sureties on the official bond of a sheriff were liable for a trespass committed by the sheriff in taking under execution the property of the plaintiff in an attempt to execute a writ issued against the property of another. Judge Wheeler, speaking for the court, states that the auhorities upon the question decided were conflicting, but followed The People v. Schuyler, 4 N. Y., 173, decided by the Court of Appeals of New York. The Supreme Court of the United States in Lammon v. Feusier, supra, in holding such act on the part of a United States Marshall to be a breach of the condition of his bond to faithfully perform the duties of his office, points out that there had been some differences of opinion in the courts of the several states upon the question involved and analogous questions, but that the decisions in The People v. Schuyler, supra, had correctly settled the law. The court says: "And the liability of the sureties in such cases has been affirmed by a great preponderance of authority, including decisions in the highest courts of Pennsylvania, Maine, Massachusetts, Ohio, Virginia, Kentucky, Missouri, Iowa, Nebraska, Texas and California," citing among other cases Holliman v. Carroll, supra. In Hall v. Tierney, supra, it is held that the object of an official bond is to obtain indemnity against the misuse of an official position for wrong purposes; and that which is done under color of office, and which would obtain no credit except for its appearing to be a regular official act, is within the protection of the bond, and must be made good by those who sign it. The court in the course of its opinion, says: "The distinction originally made between acts done by virtue of an office and acts done by color of office has been entirely disregarded by leading authorities within the past few years," citing Lammon v. Feusier, supra, among other authorities. The opinion in Hamilton v. Ward, 4 Texas, 356, relied upon by plaintiffs in error was written by the same judge who wrote Holliman v. Carroll. The Hamilton case arose upon a summary motion by plaintiff against a sheriff

to recover money received by him after return day, and is not applicable to the facts presented in the record here. Neither Liles, nor Hidalgo County, nor the depository bank, makes any claim that Liles acted in his personal capacity in endorsing the warrant and in obtaining control of the funds of the county. The transaction as a whole and in the light of his conduct subsequent to the receipt of the warrant by the county was clearly a breach of his official duty. Brown v. Sneed, 77 Texas, 471, 14 S. W., 248; Heidenheimer v. Brent, 59 Texas, 533, and other cases relied upon by plaintiffs in error, are not controlling under the facts presented.

There is no merit in the contention of plaintiffs in error that the debt of Brooks County was not paid by the cashing of the warrant, and that the county for this reason did not sustain a loss. The warrant shows on its face that it was issued in settlement of the debt. It was duly mailed to the Hidalgo County Clerk, who was authorized under the law to receive it. There is no evidence that he did not receive it. No complaint was made by the county or the commissioners' court that the warrant was not duly received, or that it was not paid. So far as the evidence discloses all irregularities and unauthorized acts with reference to the manner of handling the warrant occurred after it had been duly received by the county. If Liles did not act alone in the matter it would not relieve either him or his surety from liability. The record discloses nothing of probative value to indicate that anything other than the unauthorized acts to which he was a party caused the county to fail to receive proper credit for the proceeds of the warrant. His breach of duty is obvious.

The Court of Civil Appeals was not in error in rendering judgment against the surety company as well as Liles. Its judgment is reformed however to the extent of substituting therein as parties in lieu of the surety company, its receivers of record, John T. Suggs and E. A. Hays.

Opinion adopted by Supreme Court June 12, 1935.