Phil LOHEC, County Auditor
and Wayne Johnson

v.

GALVESTON COUNTY COMMISSIONER'S COURT, Galveston County Beach Park Board of Trustees and Galveston County.

No. D–1588.

Supreme Court of Texas.

Nov. 18, 1992.

Robert V. Shattuck, Jr., Wayne Johnson, Patrick Reilly, Galveston, for appellant.

Benjamin R. Powel, Anthony P. Brown, Kenneth J. Bower, Scott Lyford and Donald S. Glywasky, Galveston, for appellee.

Before PHILLIPS, C.J., and HIGHTOWER, HECHT and CORNYN, JJ.

## OPINION

HIGHTOWER, Justice.

In this proceeding, we consider whether a statutorily created county beach park board is subject to the purchasing and auditing requirements applicable to counties. Galveston County Auditor Phil Lohec ("Lohec") filed a declaratory action concerning the purchasing practices of the Galveston County Beach Park Board of Trustees ("the Board"). The trial court rendered declaratory judgment and enjoined purchases or payment of claims except through the county's purchasing agent and auditor. The court of appeals reversed. 814 S.W.2d 751. We reverse the judgment of the court of appeals and render judgment enjoining the Board from making purchases or paying claims except through the county's purchasing agent and subject to review by the county auditor, and ordering the Board to pay attorney's fees incurred by Lohec.

In 1973, Galveston County voters authorized creation of the Galveston County Beach Park Board of Trustees pursuant to Tex.Nat.Res.Code § 62.001 *et seq.* In 1974, by contract with the County, the Board initially arranged its own purchases with payments to be made upon signature of both the Board's chairperson and a Galveston County Commissioner sitting as a Board member without using the county purchasing agent or gaining approval from the auditor. In 1978, the contract was amended to require pre-approval from the county auditor of all payments. Beginning in December 1989, the Board began making payments without submitting them to the county auditor for approval. Subsequently Galveston County Auditor Phil Lohec[1] filed a declaratory judgment action seeking a judicial declaration of his rights and duties as county auditor in connection with the Board. The trial court rendered declaratory judgment that the Board is a subdivision and department of Galveston County and enjoined purchases or payment of claims except through the county's purchasing agent and auditor. The court of appeals reversed, concluding that a county beach park board "is an independent unit of state government, separate from [the] County."

### I.

The Board argues that county beach park boards are independent and autonomous entities which are exempt from any meaningful oversight and are not meant to function under county supervision. We disagree.

The Galveston County Beach Park Board of Trustees was created pursuant to chapter 62 of the Texas Natural Resources Code. Tex.Nat.Res.Code § 62.001 *et seq.* Chapter 62 does not indicate conclusively whether county beach park boards are independent and autonomous entities, subdi-

---

1. Wayne Johnson, a Galveston County commissioner, intervened in the lawsuit "individually ... as both a County Commissioner and a taxpayer." However, the court of appeals held that Commissioner Johnson "had no standing to intervene either as a county commissioner or as a taxpayer...." 814 S.W.2d at 755. As a result of the disposition of the other issues, it is not necessary to consider whether Commissioner Johnson has standing to intervene in the lawsuit. Thus, we express no opinion on this issue.

visions of the state, subdivisions of the county or another type of entity. Consequently, to determine the nature of county beach park boards, we will examine the characteristics of county beach park boards. Common sense dictates that important considerations in determining the nature of county beach park boards include, among other things, sources of funding, accountability and supervision.

## Chapter 62 of the Texas Natural Resources Code

"The provisions of this chapter [section 62.001 *et seq.*] apply to counties that are located or border on the Gulf of Mexico and have within their boundaries beaches that are suitable for park purposes." Tex.Nat. Res.Code § 62.001(a). A beach suitable for park purposes is defined as a "beach located within its [County's] boundaries, but not located within the boundaries of an incorporated city...." *Id.* Sections 62.012 and 62.013(a) state that a county beach park board may be created "after a favorable majority vote of the qualified voters of the county at an election ..." which is "called by the commissioners court." In addition, a county beach park board may be created "for the purpose of improving, equipping, maintaining, financing, and operating a public park or parks, or any facilities owned by the county, or to be acquired by the county, or to be managed by the county under the terms of a written contract." *Id.* at § 62.011.

The members of the county beach park board are appointed by the commissioners court and one member is required to be a member of the commissioners court. *Id.* at § 62.041. Any vacancy on the county beach park board is filled by the commissioners court. *Id.* at § 62.045. Section 62.043 requires members of the county beach park board to file a bond with the county clerk and the bond must be approved by the commissioners court and payable to the county. A county beach park board "may call on the county attor-

ney of the county for the legal services it requires"; however, "[i]n lieu of or in addition to the county attorney, the board may employ and compensate its own counsel and legal staff." *Id.* at § 62.048(a) & (b).

A county beach park board "may contract with the commissioners court of the county to have the county keep and maintain its records." *Id.* at § 62.051(b). Section 62.051(c) states that all of the records of a county beach park board "are subject to inspection by the commissioners court at all reasonable times." The funds of a county beach park board "are deposited and secured in the same manner prescribed by law for county funds." *Id.* at § 62.052. A county beach park board may employ "stenographers, bookkeepers, accountants, technical experts, and other agents and employees it requires." *Id.* at § 62.049. In addition, "[i]ndependent auditors selected by the board shall make an annual audit of all financial transactions and records of the board." *Id.* at § 62.053.

Section 62.091(a) states that "public beaches owned in fee by the county" are "under the jurisdiction of the board ..." and section 62.091(b) states that "[t]he commissioners court may designate the following land to be under the management and control of the board: (1) additional parks and facilities owned by the county; or (2) additional parks and facilities to be managed by the county under the terms of a written contract." Furthermore, the county beach park board may "advertise the county's recreational advantages for the purpose of attracting tourists, residents, and other users of the public facilities operated by the board." *Id.* at § 62.099.

## Galveston County Beach Park Board

The Board's 1989 budget was funded approximately 82% by Galveston County from public funds,[2] 16% from miscellaneous revenues (including fees collected from other sources) and 1% from state grants. The County Judge of Galveston County testi-

---

**2.** In 1989, Galveston County funded approximately $1.5 million of the Board's $1.84 million    budget.

fied that the Board is part of the budget adopted by the commissioners court, that the salary of each employee of the Board is approved by the commissioners court as part of the ordinary budget process, that the hiring of employees of the Board is approved by the commissioners court, that promotions for employees of the Board are approved by the commissioners court, and that employees of the Board were considered part of Galveston County for purposes of coverage by the Texas County and District Retirement System. In their county creation, composition, and concern solely with problems in individual counties, the county beach park boards (including the Galveston County Beach Park Board) have numerous characteristics of a county entity.

## II.

■ A "unit of state government" cannot, by definition, be "independent." The court of appeals may have intended that county beach park boards are an entirely separate governmental entity, as evidenced in the comment that the Legislature "endowed beach park boards with extensive independent powers characteristic of an autonomous body." 814 S.W.2d at 754. Alternatively, the court of appeals may have intended that county beach park boards are state agencies. These county beach park boards, however, lack any of the features characteristic of such agencies. They lack taxing authority, and we are aware of no cases in which an entity not so authorized was held to be an independent state subdivision, absent express statutory identification as such a political subdivision. *See Guaranty Petroleum Corp. v. Armstrong*, 609 S.W.2d 529, 531 (Tex.1980). County beach park boards lack state-wide jurisdiction, a trait required of entities recognized as departments, boards, or agencies of the state. *Id.* Furthermore, county beach park boards are appointed by county, not state officials.

If county beach park boards were to be considered agencies of the State, they would come under no oversight from the State Auditor, who cannot review what section 62.052 requires to be treated in the

same manner as "county funds." Tex.Gov. Code § 321.005. *Compare* Tex. Water Code § 50.381(b) (requiring water districts to file an annual audit with the State Auditor for review). Likewise, county beach park boards would not be mandated to make purchases through the State General Services Commission under the State Purchasing and General Services Act. *See* Tex.Rev.Civ.Stat. art. 601b (Vernon Supp. 1992). There is no indication that county beach park boards are encompassed by that statute's definition of a "state agency" as one "in the executive branch of state government." *Id.* at § 1.02(2)(A).

## III.

■ Central to the court of appeals' opinion is its interpretation of the legislative history behind the applicable enabling statute. The court focused on an interim legislative committee report stating that county governments "have virtually no powers which they can exercise to improve the beach[es]." 814 S.W.2d at 753. Concluding that county beach park boards were created "[t]o fill the void of local regulation of beaches," *id.*, the court of appeals failed to consider other legislation enacted together with chapter 62 of the Texas Natural Resources Code which clarifies that:

> It is the duty and responsibility of the *commissioners court* of any county located or bordering on the Gulf of Mexico to clean and maintain the condition of all public beaches located inside the county but located outside the boundaries of any incorporated city located or bordering on the Gulf of Mexico and all public beaches owned by the county and located inside the boundaries of an incorporated city, town, or village.

Tex.Nat.Res.Code § 61.066 (emphasis added). In addition, "[t]he *commissioners court* of a county bordering on the Gulf of Mexico ... by order, may regulate motor vehicle traffic on any beach within the boundaries of the county and may prohibit the littering of the beach...." *Id.* at § 61.122 (emphasis added). Thus, it is the commissioners court, not the county beach

park boards, that were empowered to fill the "void."

The court of appeals also relied on statutory language that county beach park boards "may" contract with the commissioners court to maintain records which are already "subject to inspection by the commissioners court." *Id.* at § 62.051(b), (c). *See* 814 S.W.2d at 752. The mention of contractual agreement in this subsection suggests only that county beach park boards "may" want to arrange record-keeping with the commissioners court. Similarly, section 62.098 states:

the board may enter into contracts with: (1) adjacent counties; (2) boards in adjacent counties; and (3) boards in cities of the same county in which the board has jurisdiction.

This is taken to suggest that, if a county beach park board is part of the county in which it has jurisdiction, there is a redundancy in allowing a contract with both an adjacent county *and* a board in that county. 814 S.W.2d at 753. However, the county beach park board's home county is excluded from the list of governmental agencies with which it may contract. If the court of appeals' interpretation were correct, that county should also be listed.

Further evidence of de facto unity between the County and county beach park board is found in the provision that "[t]he board may call on the county attorney of the county for legal services it requires." Tex.Nat.Res.Code § 62.048(a). It is difficult to imagine that an entirely separate entity could be empowered to use the county's legal staff without contract or payment.

## IV.

If any ambiguity remains, this court should favor more accountability of government rather than less. Public policy strongly favors protecting taxpayers with strict oversight of governmental financial transactions. In this instance, the county beach park boards handle millions of dollars in public funds for which, under the dissent's interpretation, they would be almost entirely unaccountable. It would be contrary to public policy to allow these boards to operate with total autonomy and to avoid the public posting, bidding, purchasing and auditing procedures imposed on counties unless explicitly excluded, as in the case of "city-county hospital[s] or other joint undertaking[s] of the city and county...." Tex.Loc.Gov't Code § 262.011(h). Here, no such exemption exists, and inferring one would leave a commissioners court with no corrective, supervisory or oversight power other than periodically replacing county beach park board trustees as their appointed terms expired. *See* Tex.Nat.Res. Code § 62.041.

Nor do provisions for selection of an independent auditor and for access to records included in sections 62.051 and 62.053 provide a substitute for review by the county auditor, who is "removed as far as possible from direct political influence" by "appointment at the hands of the district judges of the county." *Commissioners Court of Harris County v. Fullerton,* 596 S.W.2d 572, 576 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (quoting *Southern Surety Co. v. Hidalgo County,* 125 Tex. 390, 83 S.W.2d 313 (1935)). The unacceptable alternative would be a board of trustees not elected by voters who could hand-pick the only party reasonably able to detect their financial misdeeds. Even if such an audit revealed an impropriety, it would be unclear to whom the county beach park board is accountable. Finally, internal audits provide no check whatsoever over a county beach park board's potentially unlimited authority to issue revenue bonds, the proceeds of which could be spent without any outside approval. *See* Tex.Nat.Res.Code § 62.131.

## V.

■ In their county creation, composition, and concern solely with problems in individual counties, the county beach park boards (including the Galveston County Beach Park Board) have numerous characteristics of a county entity. Although county beach park boards are not necessarily "subdivisions" and "departments" of the county, we conclude that they are enti-

ties subject to county supervision, that they were meant to function under county supervision and that they were not intended to be independent and autonomous entities which are exempt from any meaningful oversight. As an entity subject to county supervision, the Board's purchases must be approved by the county auditor, who "has general oversight of the books and records of a county," and "shall see to the strict enforcement of the law governing county finances." Tex.Loc.Gov't Code § 112.006.[3] We reverse the judgment of the court of appeals and render judgment enjoining the Board from making purchases or paying claims except through the county's purchasing agent and subject to review by the county auditor, and ordering the Board to pay attorneys' fees incurred by Lohec.[4]

PHILLIPS, Chief Justice, dissenting.

The Court today concludes that the Galveston County Beach Park Board of Trustees (Board) is prohibited by Tex.Loc.Gov't. Code §§ 262.011(d) and 112.006 from making purchases or paying claims except

through the county purchasing agent and with the approval of the county auditor. Because these two provisions do not purport to apply to the Board, and because nothing in the Board's governing statute, Chapter 62 of the Natural Resources Code, makes these provisions applicable, I respectfully dissent from the Court's decision.

Tex.Loc.Gov't Code § 112.006 gives the county auditor general oversight of the "books and records of a county, district, or state officer authorized or required by law to receive or collect money or other property that is intended for the use of the county or that belongs to the county." The county auditor also has responsibility for enforcement of the law "governing county finances." Under the statutory scheme governing the Board, however, it is clear that the Board does not receive money that belongs to or is intended for the use of Galveston County, and that the Board's finances are separate from those of Galveston County.

---

**3.** Likewise, the Board must make its purchases through the county purchasing agent, who, in a county with a population of 74,000 or more, is required to purchase "*all* supplies, materials, and equipment required or used ... by the county or a subdivision," Tex.Loc.Gov't Code § 262.011(d) (emphasis added), and who must also "supervise all purchases made on a competitive bid." *Id.* at § 262.011(e). This is required "regardless of whether the purchase contract is made by the commissioners court or any other officer authorized to bind the county by contract." *Id.* at § 262.011(n).

The dissent states that "[n]o explanation is suggested as to why these two [use of the county purchasing agent and approval of purchases by the county auditor]—as opposed to any others in that code [Local Government Code]—should apply." 841 S.W.2d at 368 (Phillips, C.J., dissenting). However, the dissent inexplicably ignores the fact that these were the issues raised by the parties. Galveston County Auditor Phil Lohec filed a declaratory action concerning the purchasing practices of the Galveston County Beach Park Board including making all purchases through the county purchasing agent and subject to the review and approval of the county auditor. The trial court rendered declaratory judgment and enjoined purchases or payment of claims except through the county's purchasing agent and auditor.

**4.** We must also decide whether our decision will apply retroactively. Our decisions operate ret-

roactively unless this court exercises its discretion to modify that application. *Carrollton–Farmers Branch Ind. School Dist. v. Edgewood Ind. School Dist.*, 826 S.W.2d 489, 513–22 (Tex. 1992); *Reagan v. Vaughn*, 804 S.W.2d 463 (Tex. 1990). When determining whether to exercise our discretion to modify retroactive application, this court weighs, among other things, considerations of fairness, equity and policy including whether the decision involves an issue of first impression and whether retroactive application could produce substantial inequitable results. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 434 (Tex.1984); *Carrollton–Farmers Branch Ind. School Dist.*, 826 S.W.2d at 518–19.

Between 1978 and December 1989, the Board received pre-approval from the county auditor of all payments. Beginning in December 1989, the Board began making payments without submitting them to the county auditor for approval; subsequently, Lohec filed this suit. On March 1, 1990, the trial court rendered judgment enjoining the Board from making purchases or paying claims except through the county's purchasing agent and subject to approval by the county auditor. Thus, the Board had been on notice since the trial court's judgment that its procedure of making payments without submitting them to the county auditor for approval was potentially invalid. Consequently, based upon considerations of fairness, equity and policy, we declare that this holding shall be applied retroactively to the date of the trial court's judgment—March 1, 1990.

Chapter 62 of the Natural Resources Code indicates that the operations of the beach park boards are distinct from those of the counties, but are made subject to some of the same rules. The Board is authorized to charge and collect fees for access to the public beaches that it manages, TEX.NAT.RES.CODE § 62.094, and it may, without county approval, issue bonds payable from the revenues of the properties or facilities under its jurisdiction and control. *Id.* § 62.131. The funds "belonging to or under control of the board shall be deposited and secured in the same manner prescribed by law for county funds." *Id.* § 62.052. The Board is not required to file a financial statement with the commissioners court showing the status of its current operations or a proposed budget with the county auditor for inclusion in the overall county budget; rather, the only requirement imposed by statute is that independent auditors selected by the Board make an annual audit of all financial transactions and records. *Id.* § 62.053. The Board is empowered, without any express provision for oversight by the county, to enter into contracts and leases, *id.* §§ 62.096–.097, and to "spend money appropriated by the commissioners court for the purpose of cleaning and maintaining public beaches and land within its jurisdiction." *Id.* § 62.-095.

These provisions refute the notion that procurement and expenditures by the Board are "county finances." The statute speaks of money "belonging" to the beach park boards, and seemingly gives the boards considerable autonomy in spending it. In only one particular—the requirements for depositing and securing funds—are the Board's financial operations made subject to the same rules as those of the County.

Indeed, the Court does not go so far as to hold that section 112.006 of the Local Government Code by its terms applies to the Board. Likewise, it disdains the effort of showing that section 262.011(d), which requires that the county purchasing agent make all purchases for "the county or a subdivision, officer, or employee of the county," is literally applicable; the Court

allows that beach park boards "are not necessarily 'subdivisions' and 'departments' of the county." 841 S.W.2d at 366. Rather, the Court reads these additional restrictions into Chapter 62 on the basis that the beach park boards "have numerous characteristics of a county entity" and "were meant to function under county supervision." *Id.* In effect, the Court assumes that the Legislature neglected to expressly incorporate into Chapter 62 limitations that it must have intended in authorizing counties to create these entities.

The fallacy of this assumption, however, is demonstrated by Chapters 320 and 321 of the Local Government Code, in which the Legislature previously authorized the creation of park boards. Chapters 320 and 321, enacted in 1957 and 1949, apply respectively to counties with more than 5,000 people and to counties bordering on the Gulf of Mexico with one or more islands suitable for park purposes. These chapters expressly place upon park boards additional limitations of just the type the Court places upon the Board today. Chapter 320 park boards must obtain approval from the commissioners court for all contracts and leases they grant, TEX.LOC.GOV'T CODE § 320.050(b), and neither type of board can issue revenue bonds without authorization from the commissioners court. *Id.* §§ 320.-071(d), 321.071(d). Moreover, both types must annually file with the commissioners court or county judge a complete financial statement showing the financial status of the board and its properties, funds, and indebtedness, and must file a proposed budget for the upcoming year to be included as part of the county budget submitted to the commissioners court. *Id.* §§ 320.047(a), (c), 321.047(a), (c), (d). The county auditor must maintain current audits of Chapter 320 park boards and must prepare monthly and annual audit reports. *Id.* § 320.043(b). Chapter 320, unlike Chapter 62, contains a general grant of supervisory authority to the commissioners court: "Notwithstanding any other provision of this chapter, the board is subject to the supervision of the commissioners court in the exercise of all rights, powers, and privileges and in the

performance of all duties." *Id.* § 320.-050(a).

In these chapters, the Legislature provided in detail the type of county oversight it deemed necessary for each type of park board. By omitting many of these limitations in enacting Chapter 62 of the Natural Resources Code in 1969, the Legislature must be presumed to have made a conscious choice to enable counties to create more autonomous park boards. Instead, the Court today assumes that the Legislature failed to indicate what type of oversight Chapter 62 boards would be subject to, and implies a limitation more restrictive than those in Chapters 320 and 321. Our decision, even if grounded in sound considerations of public policy, is beyond the proper scope of our authority.

In substituting our own judgment for the Legislature's, we also fail to provide any principled rationale for the details of our decision. Holding that county beach park boards are "entities subject to county supervision," 841 S.W.2d at 365, the Court adopts two particular oversight requirements from the Local Government Code: mandatory use of the county purchasing agent and approval of purchases by the county auditor. No explanation is suggested as to why these two—as opposed to any others in that code—should apply.

As it has on prior occasions, the Court decides this case based on a general policy consideration—accountability of local government entities—without trying to discern how the Legislature chose to address that policy goal in the particular statute at issue. *See, e.g., Webb County Appraisal District v. New Laredo Hotel, Inc.,* 792 S.W.2d 952, 956 (Tex.1990) (Hecht, J., dissenting). When Chapter 62 is considered in conjunction with the prior authorizations of park boards, the most reasonable conclusion is that the Legislature deemed the restrictions it expressly included in Chapter 62 necessary as a matter of policy, and chose to leave the decision of whether to impose additional limitations to the county commissioners courts who would be appropriating money to the beach park boards. In choosing to apply to the Board provisions *not* expressly incorporated in Chapter 62, the Court intrudes on the judgment of the Legislature and of the Galveston County Commissioners Court.

Because I believe that nothing in the relevant statutes prohibits Galveston County and the Board from entering into the contractual arrangement challenged in this suit, I would affirm the judgment of the court of appeals.

HECHT and CORNYN, JJ., join in this dissent.