December 10, 2004

The Honorable José R. Rodríguez
El Paso County Attorney
County Courthouse
500 East San Antonio, Room 503
El Paso, Texas 79901

Opinion No. GA-0280

Re: Whether the Border Health Institute is a state agency for various purposes (RQ-0229-GA)

Dear Mr. Rodríguez:

You ask whether the Border Health Institute created under Texas Education Code chapter 151 "generally qualifies as a state agency, and whether it: (1) is entitled to sovereign immunity; (2) must comply with the Texas Open Meetings Act; (3) must comply with the Texas Public Information Act; (4) must follow state procurement and contracting rules; (5) must follow civil service rules; and (6) must obtain non-profit corporation status to be able to solicit funding."[1]

## I.  Background

The Seventy-sixth Legislature established the Border Health Institute (the "BHI") in 1999 as a "collaboration or consortium of independent public and private entities." TEX. EDUC. CODE ANN. §§ 151.001-.002(a) (Vernon 2002). Section 151.002 provides for the establishment of the BHI and describes its purpose:

> (a) The Border Health Institute is established in the city of El Paso.
>
> (b) The institute shall operate in a manner that facilitates and assists the activities of international, national, regional, or local health-related institutions working in the Texas-Mexico border region to:
>
> > (1) create and fund centers or component units within the institute to facilitate research in fields of study affecting public health in the border region, including research related to diabetes, Hispanic health

---

[1]Letter from Honorable José R. Rodríguez, El Paso County Attorney, to Honorable Greg Abbott, Texas Attorney General (May 17, 2004) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

issues, infectious diseases, emerging infections, environmental health issues, and children's health issues;

        (2) deliver health care or provide health education to persons living in the border region; and

        (3) conduct and facilitate research in fields of study affecting public health in the border region, including research related to diabetes, Hispanic health issues, infectious diseases, emerging infections, environmental health issues, and children's health issues.

*Id.* § 151.002(a)-(b). The bill analysis corroborates that the purpose of the BHI "is to deliver health care or provide health education to persons living in the border region and conduct research in fields of study affecting public health, . . . including research related to infectious diseases, diabetes, environmental health issues, and children's health issues." HOUSE COMM. ON HIGHER EDUC., BILL ANALYSIS, Tex. H.B. 2025, 76th Leg., R.S. (1999).

The initial governing board of the BHI was composed of the chief executive officer or president, or their designees, of the following nine institutions:

(1) The University of Texas at El Paso;

(2) Texas Tech University Health Sciences Center at El Paso;

(3) El Paso Community College District;

(4) R. E. Thomason General Hospital;

(5) El Paso City/County Health District;

(6) The University of Texas Health Science Center at Houston, School of Public Health;

(7) El Paso County Medical Society;

(8) Paso del Norte Health Foundation; and

(9) The Texas Department of Health.

TEX. EDUC. CODE ANN. §§ 151.003(a), .004(a) (Vernon 2002). The governing board is authorized to adopt procedures for "changing, adding, or removing entities as members of the institute . . . and creating development or advisory boards for the institute." *Id.* § 151.003(b). At present, the following institutions hold voting positions on the BHI board:

- El Paso City-County Health and Environmental District

- El Paso Community College

- El Paso County Medical Society

- Texas Department of Health

- Texas Tech University Health Sciences Center at El Paso

- Thomason Hospital

- University of Texas at El Paso

- University of Texas, Houston, School of Public Health, El Paso Campus

*See* TEX. DEP'T OF HEALTH, BORDER HEALTH INSTITUTE, *available at* http://www.r10.tdh.state .tx.us/obh/bhi/bhi.htm (last visited Oct. 6, 2004). The BHI governing board is required to adopt rules governing operations and deliberations of the board and the institute, and the governing board may hire an executive director and staff necessary to operate the institute. *See* TEX. EDUC. CODE ANN. § 151.004(b)-(c) (Vernon 2002). The governing board is required to meet at least once a year "to review the progress of the institute and to determine the institute's future actions and operational plans." *Id.* § 151.004(d).

Section 151.005 of the Education Code describes the funding for the BHI and provides:

> (a) In addition to any amount appropriated by the legislature, the institute may apply for and accept funds from the federal government or any other public or private entity. The institute or any member of the institute may also solicit and accept pledges, gifts, and endowments from private sources on the institute's behalf. A pledge, gift, or endowment solicited under this section must be consistent with the purposes of the institute.

> (b) The governing board of the institute shall manage and approve disbursements of appropriations, funds, pledges, gifts, and endowments that are the property of the institute.

> (c) The governing board of the institute shall manage any capital improvements constructed, owned, or leased by the institute and any real property acquired by the institute.

*Id.* § 151.005(a)-(c). Under section 151.006, physical facilities to be used in research projects, provision of health care, and education programs may be "provided [to the BHI] by a public or private entity or by a cooperative, consortium, or joint venture consisting of public or private

entities." *Id.* § 151.006. Additionally, a physical facility "may be constructed, maintained, or operated with funds the institute receives under Section 151.005 and any funds appropriated for that purpose." *Id.*

A bill analysis prepared by the House Research Organization in 1999 notes that "[i]n December 1998, the University of Texas System and Texas Tech University signed a collaborative agreement dedicated to creating a future health campus in El Paso. Establishing the Border Health Institute would be the next logical step." HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.B. 2025, 76th Leg., R.S. (1999). The Texas Department of Health's website described the status of the BHI in early 2003. *See* TEX. DEP'T OF HEALTH, BORDER HEALTH INSTITUTE, *available at* http://www.r10.tdh.state.tx.us/obh/bhi/bhi.htm (last visited Sept. 4, 2004). Although the legislature in 2003 did not fund the remaining two-year program of the Texas Tech Health Sciences Center, it did nevertheless provide funding for the BHI as part of its appropriation to the University of Texas at El Paso. A line item appropriation in the 2003 General Appropriations Act for the University of Texas at El Paso listed $284,375 for the "Border Community Health Education Institute" for both fiscal year 2004 and fiscal year 2005. *See* General Appropriations Act, Act of June 1, 2003, 78th Leg., R.S., ch. 1330, art. III-78, 2003 Tex. Gen. Laws 5023, 5339.

The BHI is required to provide an "annual audited financial statement and a status report of each project undertaken" to each member of the governing board and to each member of the legislature "whose district includes any portion of a county where the [BHI] is established or operating." TEX. EDUC. CODE ANN. § 151.008 (Vernon 2002). Moreover, the BHI governing board, "in consultation with the institute's members," is required to develop a ten-year strategic plan "to guide and evaluate the institute's progress toward achieving the purposes of the institute under Section 151.002." *Id.* § 151.010(a). Each even-numbered year, not later than December 15, the BHI governing board must submit to the legislature and to the Texas Higher Education Coordinating Board "a report concerning the strategic plan . . . including any recommendation for legislative action." *Id.* § 151.010(d). Those institutions that are subject to the oversight and rules of the Texas Higher Education Coordinating Board under chapter 61 of the Education Code "remain subject to that supervision and those rules as those institutions participate in the institute and its activities." *Id.* § 151.009. The member institutions subject to Coordinating Board oversight are the University of Texas at El Paso, Texas Tech University Health Sciences Center at El Paso, the University of Texas Health Science Center at Houston, School of Public Health, and the El Paso Community College District. *See id.* §§ 61.003, .051.

## II.     Status of the BHI:  State Agency or Political Subdivision?

The BHI is one of a number of entities that combine both state and local characteristics. *See, e.g.*, Tex. Att'y Gen. Op. No. JM-424 (1986) at 2 (community centers); Tex. Att'y Gen. LO-95-024, at 4 (Coastal Coordination Council). Its nine original statutorily-proscribed member institutions included seven public agencies and two private entities. Its present composition includes six public and two private members. The BHI is created by statute and its duties prescribed thereby. It may receive appropriated as well as federal funds. It is required to submit reports to the legislature and to the Higher Education Coordinating Board in even-numbered years. It appears to be a governmental body for all purposes.

The more difficult question is whether the BHI is a state or local governmental entity. In *Guaranty Petroleum Corporation v. Armstrong*, 609 S.W.2d 529 (Tex. 1980), the Supreme Court of Texas considered whether a navigation district constituted a "political subdivision" or a "board or agency of the state." The court declared:

> A political subdivision differs from a department[,] board or agency of the State. A political subdivision has jurisdiction over a portion of the State; a department, board or agency of the State exercises its jurisdiction throughout the State. Members of the governing body of a political subdivision are elected in local elections or are appointed by locally elected officials; those who govern departments, boards or agencies of the State are elected in statewide elections or are appointed by State officials. Political subdivisions have the power to assess and collect taxes; departments, boards and agencies do not have that power. Our examination of a number of statutes shows that the legislature has consistently recognized these distinctions between departments, boards or agencies on the one hand and political subdivisions on the other.

*Id.* at 531. The court ultimately concluded that the Brownsville Navigation District was a "political subdivision" rather than a "department, board or agency of the State." *Id.* at 530.

In *Lohec v. Galveston County Commissioner's Court*, 841 S.W.2d 361 (Tex. 1992), the Supreme Court of Texas, in considering the status of the Galveston County Beach Park Board, cited the *Guaranty Petroleum* case and emphasized that "[c]ounty beach park boards lack state-wide jurisdiction, a trait required of entities recognized as departments, boards, or agencies of the state." *Id.* at 364. Moreover, "[t]here is no indication that county beach park boards are encompassed by [the state purchasing statute's] definition of a 'state agency' as one 'in the executive branch of state government.'" *Id.* Thus, the court concluded that the beach park board was an entity of county government. *See id.* at 365-66. As the dissenting opinion points out, however, the majority seems to have relied most heavily for its conclusion on the observation that, if county beach park boards are not deemed to be an organ of county government, they would be "independent and autonomous entities which are exempt from any meaningful oversight." *Id.* at 366.

Finally, in a very recent case, the Supreme Court reiterated the test for determining whether an entity is a "state agency." In *Texas Department of Transportation v. City of Sunset Valley*, No. 03-0041, 2004 WL 2125670, at *4 (Tex. Sept. 24, 2004) (not yet reported), the Court, in considering an argument that a municipality was a "state agency," stated as follows:

> [W]e have long recognized a distinction between agencies of the State, which generally exercise statewide jurisdiction, and political subdivisions like municipalities, which have limited geographic jurisdiction. *See Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939-40 (Tex. 1993) ("[A] political subdivision differs from a[n] . . . agency of the State. A political subdivision has jurisdiction over a portion of the State; a[n] . . . agency of the State

exercises its jurisdiction throughout the State. . . . [T]he legislature has consistently recognized these distinctions between . . . agencies on the one hand and political subdivisions on the other.").

The difficulty in applying the *Guaranty Petroleum, Lohec,* and *Sunset Valley* standards becomes apparent when considering the status of the BHI. The BHI has much more tenuous ties with local government than does a navigation district or a county beach park board. A majority of its members represent institutions of higher education located in places as geographically diverse as El Paso, Lubbock, and Houston. The purpose of the BHI is, *inter alia,* to deliver health care, provide health education, and to assist the activities of various health-related institutions "working in the Texas-Mexico border region," a region that stretches from El Paso to Brownsville. Finally, the BHI is required to submit biennial reports to the legislature and to the Higher Education Coordinating Board. On the other hand, under the jurisdictional test of *Guaranty Petroleum* and *Lohec,* the BHI clearly fails to qualify as a state agency within the executive branch of state government. Its jurisdiction is limited to "a portion of the state" rather than to the state as a whole. Furthermore, its membership bears the indicia of neither state agency nor political subdivision: members are not elected or appointed either by local officials or state officials. BHI membership was initially fixed by its enabling legislation. It is at present determined by the board members themselves. We must conclude that, in its present composition, the BHI is neither political subdivision nor state agency. Rather, it occupies that nebulous territory between those two extremes, partaking of the qualities of both, but never fully either.

## III.    Questions and Analysis

Although we cannot determine the precise status of the BHI for all purposes, we can discern the applicability of particular statutes to that entity.

### A.    Sovereign Immunity

You first ask whether the BHI is entitled to sovereign immunity. As we have indicated, the BHI is neither political subdivision or state agency. While the entitlement to sovereign immunity of both state and local governmental entities is well established in Texas law, no judicial decision has considered its applicability to hybrid entities such as the BHI. We will, consequently, briefly review the law regarding sovereign immunity as applied to both state and local entities. We caution, however, that we cannot determine as a matter of law whether the BHI is entitled to any kind of sovereign immunity. The legislature has simply failed to provide any guidance in this matter. The following discussion is therefore predicated on the assumption that the general principle of sovereign immunity is applicable to the BHI.

Initially, we note that the Supreme Court of Texas has distinguished between immunity from suit and immunity from liability. *See Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex. 1997). "*Immunity from suit* bars a suit against the State unless the State expressly gives its consent to the suit," while "*[i]mmunity from liability* protects the State from judgments even if the Legislature has expressly given consent to the suit." *Id.*

With regard to tort liability, the legislature has partially waived sovereign immunity for both the state and its political subdivisions. The Texas Tort Claims Act, chapter 101 of the Civil Practice and Remedies Code, broadly defines "governmental unit" to include "any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(D) (Vernon Supp. 2004-05). The BHI, as a creature of statute, is thus a "governmental unit" for purposes of the Tort Claims Act.

Section 101.025 of the Civil Practice and Remedies Code provides:

> (a) Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.

> (b) A person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter.

*Id.* § 101.025 (Vernon 1997). Liability of the state government under the Tort Claims Act "is limited to money damages in a maximum amount of $250,000 for each person and $500,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property." *Id.* § 101.023(a) (Vernon Supp. 2004-05). A unit of local government's liability "is limited to money damages in a maximum amount of $100,000 for each person and $300,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property." *Id.* § 101.023(b). Because we have determined that the BHI is neither a state governmental agency nor a local governmental entity, but rather a hybrid of the two, we cannot say with assurance which tort liability limitation would apply. We may conclude, however, that the BHI is entitled to sovereign immunity in tort cases, except to the extent such immunity is waived by statute.

With regard to contractual liability, the Texas Supreme Court said in *Federal Sign* that when it contracts with private citizens, the State "waives only *immunity from liability.*" *Fed. Sign*, 951 S.W.2d at 408. On the other hand, "a private citizen must have legislative consent to sue the State on a breach of contract claim. The act of contracting does not waive the State's *immunity from suit.*" *Id.* As to local governmental entities, "[t]he general authority of counties and other local governments to sue and be sued generally acts as a statutory consent to suit although not a waiver of sovereign immunity." 35 DAVID BROOKS, COUNTY AND SPECIAL DISTRICT LAW § 2.2 n.5 (2d ed. 2002) (statutes and cases cited therein).

The BHI is not, as we have indicated, either a state or local governmental entity. *Federal Sign* could be read, however, to imply that no governmental entity is immune from liability on a valid contract. We may also infer from that case that the BHI retains immunity from suit unless and until permission to sue is granted by the legislature. As previously noted, most local governmental entities have the statutory authority to sue and be sued. No such authority is granted to the BHI in its enabling legislation. In our view, therefore, the legislature has not waived the BHI's immunity from suit for breach of contract. Accordingly, a party aggrieved by its contract with the BHI must seek legislative permission to sue that entity.

### B.    The Open Meetings Act

You next ask whether the BHI is subject to the Texas Open Meetings Act (the "OMA"). *See* Request Letter, *supra* note 1, at 1, 5-7; TEX. GOV'T CODE ANN. §§ 551.001-.146 (Vernon 1994 & Supp. 2004-05) (Open Meetings Act). The OMA provides that "[e]very regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." TEX. GOV'T CODE ANN. § 551.002 (Vernon 1994). "Governmental body" is defined for purposes of the OMA as follows:

> (A)    a board, commission, department, committee, or agency within the executive or legislative branch of state government that is directed by one or more elected or appointed officials;
>
> (B)    a county commissioners court in the state;
>
> (C)    a municipal governing body in the state;
>
> (D)    a deliberative body that has rulemaking or quasi-judicial power and that is classified as a department, agency, or political subdivision of a county or municipality;
>
> (E)    a school district board of trustees;
>
> (F)    a county board of school trustees;
>
> (G)    a county board of education;
>
> (H)    the governing board of a special district created by law;
>
> (I)    a local workforce development board created under Section 2308.253;
>
> (J)    a nonprofit corporation that is eligible to receive funds under the federal community services block grant program and that is authorized by this state to serve a geographic area of the state; and
>
> (K)    a nonprofit corporation organized under Chapter 67, Water Code, that provides water supply or wastewater service, or both, and is exempt from ad valorem taxation under Section 11.30, Tax Code.

*Id.* § 551.001(3) (Vernon Supp. 2004-05). We have already determined that the BHI is not an "agency within the executive or legislative branch of state government," and that it does not qualify as any kind of local governmental body. In addition, it is not a nonprofit corporation under subdivisions (J) and (K) of section 551.001(3). These conclusions do not mean, however, that the BHI is exempt from the Open Meetings Act.

In *Sierra Club v. Austin Transportation Study Policy Advisory Committee*, 746 S.W.2d 298 (Tex. App.–Austin 1988, writ denied), the court of appeals considered the applicability of the OMA

to the Austin Transportation Study Policy Advisory Committee ("ATSPAC"), "a seventeen-member body composed of state, county, regional, and municipal public officials." *Id.* at 300. Although not legislatively created, ATSPAC had been designated a "Metropolitan Planning Organization" under federal law, and was an "official body designated by the governor." *Id.* at 300-01. The ATSPAC played "a vital role in deciding which highway projects are planned, built and funded in the Austin urban area." *Id.* The court concluded that although the ATSPAC was not a "special district" in the usual sense, it functioned as such for purposes of the OMA. *Id.* at 301.

Like the ATSPAC, the BHI is primarily composed of representatives of public entities. In addition, its enabling statute indicates that it performs governmental functions, particularly those of providing health care and health education to persons living in the border region. The BHI, unlike ATSPAC, was created by statute. Both receive appropriated and federal funds, even if indirectly. As the court noted in *Sierra Club*, the language of the OMA "clearly reveals the Legislature's intention to give it broad coverage." *Id.* at 300. It "broadly applies to *any* meeting by a quorum of the members of a governmental body which meets to discuss *any* public business or policy, with certain exceptions." *Id.* (emphasis added). As a result, we believe that the BHI exhibits the kind of qualities sufficient to bring it within the category of a "special district" for purposes of the OMA. *See* TEX. GOV'T CODE ANN. § 551.001(3)(H) (Vernon Supp. 2004-05); *see also Sierra Club*, 746 S.W.2d at 301. We conclude that chapter 551 of the Government Code, the Open Meetings Act, is applicable to meetings of the governing board of the BHI.

## C.      The Public Information Act

Your next question is whether the BHI must comply with the Texas Public Information Act. *See* Request Letter, *supra* note 1, at 7-8; TEX. GOV'T CODE ANN. §§ 551.001-.353 (Vernon 1994 & Supp. 2004-05) (Public Information Act). Section 552.002 of the Government Code defines public information as "information that is collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business . . . by a governmental body . . . or . . . for a governmental body and the governmental body owns the information or has a right of access to it." TEX. GOV'T CODE ANN. § 552.002 (Vernon Supp. 2004-05). Section 552.003 defines governmental body, in part, as follows:

> (viii)  the governing board of a special district;
>
>      . . . .
>
> (xii)  the part, section, or portion of an organization, corporation, commission, committee, institution, or agency that spends or that is supported by public funds; . . . .

*Id.* § 552.003(1)(A)(viii), (xii). We have already concluded that the BHI is a "special district" for OMA purposes under the test of *Sierra Club*. We need not, however, extend the *Sierra Club* case beyond its scope, because the BHI is "an organization . . . that spends or that is supported by public funds." We conclude that the BHI is a "governmental body" under the terms of chapter 552 of the Government Code, and thus subject to the Public Information Act.

### D.    State Procurement and Contracting Rules

You also ask whether the BHI "must follow state procurement and contracting rules." Request Letter, *supra* note 1, at 1, 8.  Under the State Purchasing and General Services Act, a state agency is defined as:

> (A)  a department, commission, board, office, or other agency in the executive branch of state government created by the state constitution or a state statute;
>
>       . . . .
>
> (C)  a university system or an institution of higher education as defined by Section 61.003, Education Code, except a public junior college.

TEX. GOV'T CODE ANN. § 2151.002 (Vernon Supp. 2004-05).  Chapter 2155 of the Government Codes sets forth the state purchasing rules and procedures that a state agency must follow. *See id.* §§ 2155.001-.448 (Vernon 2000 & Supp. 2004-05).  Because we have determined that the BHI is not a state agency within the executive branch of government nor a university system or institution of higher education, we conclude that the BHI is not required to follow state procurement and contracting rules.

### E.    Civil Service

You further question whether the BHI must follow civil service rules. *See* Request Letter, *supra* note 1, at 1, 8.  Civil service systems may be created under chapters 143 and 158 of the Local Government Code for municipalities and counties. *See* TEX. LOC. GOV'T CODE ANN. chs. 143, 158 (Vernon 1999 & Supp. 2004-05).  There is no such system for employees of state agencies or educational entities.  Because we have concluded that the BHI is neither a state agency nor a local governmental entity, we are aware of no statute that would require the BHI to follow civil service rules.

### F.    Nonprofit Corporation Status

You finally ask whether the BHI must obtain nonprofit corporation status in order to solicit funding. *See* Request Letter, *supra* note 1, at 1, 8.  The BHI is, as we have indicated, a creature of statute.  Unlike, for example, the Texas Guaranteed Student Loan Corporation, it is not deemed a nonprofit corporation by its enabling legislation. *See* Tex. Att'y Gen. Op. No. MW-295 (1981).  The BHI may, by statute, receive appropriated funds and federal funds, as well as funds from any public or private entity. *See* TEX. EDUC. CODE ANN. § 151.005(a)-(c) (Vernon 2002).  Its governing board or any member "may . . . solicit and accept pledges, gifts, and endowments from private sources on the institute's behalf." *Id.* § 151.005(a).  Because its funding is specifically described by its enabling legislation, and its solicitation of funds is specifically permitted, the BHI need not obtain nonprofit corporation status in order to solicit funding.

## S U M M A R Y

The Border Health Institute is neither a state agency within the executive branch of state government nor a local political subdivision. The BHI may or may not be entitled to sovereign immunity. It must comply with the Open Meetings Act and the Public Information Act. It is not required to follow state procurement and contracting rules, nor is it subject to civil service rules. The BHI need not obtain nonprofit corporation status because it has statutory authority to solicit funding from public and private sources.

Yours very truly,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
*First Assistant Attorney General*

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee