Cindy Olson Bourland, Justice
Steve Veigel appeals from a summary judgment rendered in favor of the Texas Boll Weevil Eradication Foundation, Inc., in its suit to collect assessments for the operation of pest-eradication programs for the years 1999 and 2001. In 2010, after obtaining two default judgments against Veigel Farms, Inc., on August 10, 2000, and September 29, 2004, the Foundation sued Veigel personally as Secretary and *195 Director of Veigel Farms, Inc., which had forfeited its corporate privileges at the time the debts were incurred. On cross-motions for summary judgment, the district court granted the Foundation's motion and denied Veigel's. Veigel appeals,[1] arguing that the suit is time-barred by the statute of limitations or, alternatively, by laches, res judicata, and collateral estoppel, and that he raised a genuine issue of material fact that defeated the Foundation's motion for summary judgment. For the reasons that follow, we will reverse the trial court's orders and render judgment in favor of Veigel.
Factual and Procedural Background
The Texas Legislature created the Foundation to manage programs aimed at eradicating the boll weevil and the pink bollworm from cotton crops in Texas. See Tex. Agric. Code § 74.1011(a). The Foundation is a "quasi-governmental entity" operating under the supervision and control of the commissioner of agriculture and is authorized, subject to referendum approval by affected cotton growers, to collect assessments that it uses to operate its eradication programs. See id. §§ 74.101, .113. Veigel Farms, Inc., is a Texas corporation that farmed cotton for commercial production from 1999 to 2002. During that time, Steve Veigel was Secretary and Director of Veigel Farms.[2] Alleging failure to pay assessments levied in 1999 and 2001, the Foundation sued Veigel Farms and obtained default judgments against the farm in 2000 and 2004.
Veigel Farms's corporate privileges were forfeited for failure to pay franchise taxes from August 1996 to September 2002 and again from October 2003 to January 2006. See Tex. Tax Code § 171.251(2). The parties agree that it was during these periods of forfeiture that the assessments at issue were incurred, the suits to collect them were filed, and the default judgments against Veigel Farms were signed. In August 2010, the Foundation initiated the underlying suit against Veigel personally seeking to collect on the default judgments under a tax statute that provides that officers and directors are personally liable for corporate debts incurred during forfeiture periods. See id. § 171.255(a). The Foundation sought a total of $26,158.22 for the two judgments or, in the alternative, $14,726.06 for the two assessments alone. On August 30, 2010, Veigel filed special exceptions, an answer, a motion to dismiss, and a motion for summary judgment. Veigel asserted as affirmative defenses payment, laches, res judicata, collateral estoppel, and limitations.[3] In his motion for summary judgment, *196 Veigel sought judgment based on limitations, noting that the Foundation's lawsuit was filed more than four years after the underlying 1999 and 2001 assessments were due or the default judgments related to those assessments were signed. He further argued he was entitled to judgment on his defenses of "res judicata and/or collateral estoppel."
Nothing happened in the case for about five years, until the Foundation filed a motion to retain the suit on November 25, 2015. The trial court denied that motion and dismissed the suit for want of prosecution on December 15, 2015, but on January 4, 2016, the court granted the Foundation's motion to reconsider and reinstated the case on its docket. The Foundation then responded to Veigel's motion for summary judgment and filed its own traditional and no-evidence motion for summary judgment. In its response to Veigel's motion for summary judgment, the Foundation asserted (1) that it was a political subdivision and therefore not subject to limitations, see Tex. Civ. Prac. & Rem. Code § 16.061 (political subdivision is exempt from statute of limitations), and (2) that Veigel had not conclusively established collateral estoppel or res judicata. The Foundation moved for traditional summary judgment on the grounds that Veigel was personally liable for the assessments levied against Veigel Farms and for the judgments obtained against Veigel Farms in 2000 and 2004, and for no-evidence summary judgment as to Veigel's affirmative defenses of payment and laches. The trial court denied Veigel's motion for summary judgment. In a separate order, without specifying the grounds, the court granted the Foundation's motion for summary judgment, finding that "all relief requested" by the Foundation should be granted and awarding the Foundation $32,179.16, post-judgment interest, and costs of court. Veigel appeals from those orders.
Standard of Review
We review the trial court's granting of summary judgment de novo. Valence Operating Co. v. Dorsett , 164 S.W.3d 656, 661 (Tex. 2005). Where, as here, both parties move for summary judgment, "we determine all issues presented and render the judgment the trial court should have rendered." Colorado Cty., Tex. v. Staff , 510 S.W.3d 435, 444 (Tex. 2017). To prevail on a motion for traditional summary judgment, a movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). The movant must therefore establish each element of his claim or defense as a matter of law or negate an element of the respondent's claim or defense as a matter of law. See M.D. Anderson Hosp. & Tumor Inst. v. Willrich , 28 S.W.3d 22, 23 (Tex. 2000). Thus, a defendant seeking summary judgment on an affirmative defense must plead and conclusively prove each element of his defense. Montgomery v. Kennedy , 669 S.W.2d 309, 310-11 (Tex. 1984) ; Ellard v. Ellard , 441 S.W.3d 780, 781 (Tex. App.-San Antonio 2014, no pet.) ; see Tex. R. Civ. P. 94, 166(a).
Discussion
Veigel first argues that the trial court erred in denying his motion for summary judgment based on limitations because the Foundation is not a political subdivision under the Texas Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code § 16.061. Veigel also contends that *197 the Foundation's claims are barred by laches, res judicata, and collateral estoppel and that he raised genuine issues of material fact that defeated the Foundation's motion for summary judgment. Because Veigel's limitations defense is dispositive of this appeal, we limit our discussion to his first issue.
Structure and Nature of the Foundation
Chapter 74, subchapter D, of the agriculture code governs the Foundation, which is the entity recognized by the department of agriculture as "the entity to plan, carry out, and operate programs to eliminate" boll weevils and bollworms, subject to the control of the commissioner of agriculture.[4] Tex. Agric. Code § 74.1011 ; see generally id. §§ 74.101-.131 ("Official Cotton Growers' Boll Weevil Eradication Foundation"). The Foundation operates throughout the entire state, which is divided into "eradication zones" due to regional differences in "soil conditions, growing seasons, farming techniques, and climate conditions." Id. § 74.101(a)(2). Subchapter D defines six "statutory zones," specifying which counties fall into which zones. Id. § 74.1021. Further, the commissioner may designate proposed non-statutory eradication zones by rule if the area is not within a statutory zone that has approved an eradication program. Id. § 74.1042. The commissioner must conduct a referendum in each proposed eradication zone to determine whether cotton growers in the area approve of establishing the zone. Id. § 74.105(a); see id. § 74.114 (describing how referenda are to be conducted). The Foundation is governed by a board composed of members elected from each approved eradication zone; board members appointed by the commissioner because they are located in zones that were not approved by referenda; and certain mandated board members from around the state-an agricultural lender, an entomologist who specializes in integrated pest management, two representatives from industries allied with cotton production, and a representative from the pest-control industry. Id. § 74.107.
For each approved eradication zone, the commissioner shall propose an assessment necessary to eradicate boll weevils, and that proposed assessment is submitted to the cotton growers in the area for approval through a referendum. Id. § 74.113. The Foundation has the authority to collect approved assessments, and those assessments may only be used for eradication, the Foundation's operating costs, and programs consistent with the Foundation's purpose. Id. § 74.113(e), (f). The Foundation is responsible for all expenses incurred in conducting a referendum or a board election. Id. § 74.114(b).
The Foundation is "a Texas nonprofit corporation chartered by the secretary of state." Id. § 74.1011 ; see also id. § 74.102(8) (" 'Foundation' means the Texas Boll Weevil Eradication Foundation, Inc., a Texas nonprofit corporation."). Subchapter D specifies that the Foundation and its board "are state agencies" only for purposes of being exempt from taxation and for indemnification under chapter 104 *198 of the civil practice and remedies code.[5] Id. § 74.109(d). Subchapter D also states that the Foundation "is a governmental unit under Section 101.001, Civil Practice and Remedies Code,[6] and is entitled to governmental immunity," and that any tort claim leveled against the Foundation must be made under the Tort Claims Act. Id. § 74.109(f). Section 74.129 states that the Foundation is "a quasi-governmental entity" that "is carrying out an important governmental function" and must thus "be immune from lawsuits and liability except to the extent provided in [the Tort Claims Act] and as provided by this section." Id. § 74.129; see also id. § 74.101(a)(3) (noting need for "quasi-governmental entity" to eradicate pests subject to commissioner's supervision and control). The Foundation is subject to the Open Meetings Act and the Open Records Act,ibr.US_Case_Law.Schema.Case_Body:v1">7 id. § 74.109(i); each board member must be sworn into office by a representative of the commissioner by taking the same oath of office required for elected state officials, id. § 74.106(h); and board members are subject to the same restrictions as local public officials, id. § 74.109(j). Finally, the commissioner is required to establish procedures to review and resolve claims related to acts by the Foundation, and the commissioner's decision in an appeal is subject to judicial review under the Administrative Procedures Act. Id. § 74.1095.
Is the Foundation a political subdivision exempt from statutory limitations?
Veigel asserts that the Foundation's claims are barred by the four-year limitations on debt actions. See Tex. Civ. Prac. & Rem. Code § 16.004. The Foundation does not contest that that is the applicable statute of limitations but counters that it is a political subdivision and thus exempt from limitations under section 16.061(a), which states:
A right of action of this state or a political subdivision of the state, including a county, an incorporated city or town, a navigation district, a municipal utility district, a port authority, an entity acting under Chapter 54, Transportation Code, a school district, or an entity created under Section 52, Article III [authorizing various political subdivisions to incur bonded indebtedness to improve, construct, or maintain certain bodies of water or roads], or Section 59, Article XVI [governing conservation and reclamation districts], Texas Constitution, is not barred by any of the following sections, *199 [including section 16.004 's four-year statute of limitations].
Id. § 16.061(a).[8] Because there is no dispute about the applicable statute of limitations or about when the Foundation's suit was filed, the only question to be answered is whether the Foundation is a political subdivision and thus exempt from limitations.[9]
Section 16.061 does not define the term "political subdivision."[10] ibr.US_Case_Law.Schema.Case_Body:v1">See id. § 16.061(b). We thus first look to Guaranty Petroleum Corp. v. Armstrong , which both the Foundation and Veigel cite for support. 609 S.W.2d 529 (Tex. 1980). In Guaranty Petroleum , the Texas Supreme Court was asked to determine whether a navigation district was a political subdivision and therefore authorized to execute a mineral lease. Id. at 529. In concluding that the navigation district was a political subdivision, the supreme court stated:
A political subdivision has jurisdiction over a portion of the State; a department, board or agency of the State exercises its jurisdiction throughout the State. Members of the governing body of a political subdivision are elected in local elections or are appointed by locally elected officials; those who govern departments, boards or agencies of the State are elected in statewide elections or are appointed by State officials. Political subdivisions have the power to assess and collect taxes; departments, boards and agencies do not have that power.
Id. at 531. Cases decided since Guaranty Petroleum have looked to those same three elements in determining whether an entity can be considered a political subdivision. See, e.g. , City of El Paso v. El Paso Cmty. Coll. Dist. , 729 S.W.2d 296, 299 (Tex. 1986) (holding that school districts were political subdivisions because they possessed all three Guaranty Petroleum features); Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc. , 526 S.W.3d 693, 702 n.5 (Tex. App.-Houston [14th Dist.] 2017, pet. filed) ("Courts have long recognized a distinction between agencies of the state, which generally exercise statewide jurisdiction, and political subdivisions, which have limited geographic jurisdiction."); Ohnesorge v. Winfree Acad. Charter Sch. , 328 S.W.3d 654, 657 (Tex. App.-Dallas 2010, no pet.) (stating that supreme court defined "the attributes of a political subdivision" in Guaranty Petroleum ); see also Texas Dep't of Transp. v. City of Sunset Valley , 146 S.W.3d 637, 643 (Tex. 2004) ("we have long recognized a distinction between agencies of the State, which generally exercise statewide jurisdiction, and political subdivisions like municipalities, *200 which have limited geographic jurisdiction"); Monsanto Co. v. Cornerstones Mun. Util. Dist. , 865 S.W.2d 937, 939-40 (Tex. 1993) (noting that "ordinary meaning of 'state,' as it [is] used by the Texas courts, envisions an entity having statewide jurisdiction rather than an entity having local or limited jurisdiction," and quoting Guaranty Petroleum ).
As we explain below, we hold that under Guaranty Petroleum , although the Foundation is a quasi-governmental entity, with characteristics of both private and governmental entities, it is not a "political subdivision" so as to be exempt from the statute of limitations.
First, the Foundation operates statewide, although the state is divided into various eradication zones. See, e.g. , Tex. Agric. Code §§ 74.101, .1021, .1042. Its jurisdiction is not limited to "a portion of the State." Guaranty Petroleum , 609 S.W.2d at 531. As for the second Guaranty Petroleum characteristic, each approved eradication zone's board member is decided by a vote of that zone's local eligible cotton growers. See Tex. Agric. Code § 74.107(a). However, if a zone is not approved in the referendum, the commissioner appoints a board member from that area. See id. §§ 74.105(d), .107. Further, the commissioner is responsible for appointing the five non-cotton-grower members mandated to be included on the board. See id. § 74.107(b). Thus, the Foundation's board is made up of members both elected by the local growers and appointed by a state official, as opposed to being entirely locally elected or appointed by local elected officials. See Guaranty Petroleum , 609 S.W.2d at 531.
Finally, the supreme court held years ago that the assessments collected and maintained by the Foundation are fees, not occupation taxes. Texas Boll Weevil Eradication Found., Inc. v. Lewellen , 952 S.W.2d 454, 461-63 (Tex. 1997). Although the legislature amended subchapter D in response to the supreme court's Lewellen opinion, which went on to hold that subchapter D as originally drafted was an unconstitutional delegation of governmental power to a private entity, see ids="11902483" index="40" url="https://cite.case.law/sw2d/952/454/#p461">id. at 475, we see no reason that the court's explanation as to why the assessments are fees and not taxes would not still apply-the assessments are still used to pay for eradication efforts against a public nuisance.[11]
The Foundation argues that we should adopt our sister court's reasoning in El Paso County Juvenile Board v. Aguilar , which considered whether the El Paso County Juvenile Board was a political subdivision under the labor code and thus immune from suit. 387 S.W.3d 795, 797 (Tex. App.-El Paso 2012, no pet.). The Aguilar court noted that while the board did not have the power to assess and collect taxes, it did "have the authority to establish certain fees" under the family code. Id. at 798. The court did not discuss why a fee is equivalent to a tax under the Guaranty Petroleum analysis-it merely proceeded as if the ability to assess and collect fees was the same as the ability to assess and collect taxes. See ids="7095528" index="43" url="https://cite.case.law/sw3d/387/795/#p797">id. However, there is a legal distinction between fees and taxes, see, e.g. , *201 TracFone Wireless, Inc. v. Commission on State Emergency Commc'ns , 397 S.W.3d 173, 175 n.3 (Tex. 2013) (discussing fees versus taxes), and in this case, we do not believe it appropriate to assume that there is no distinction to be made when considering the Foundation's status as a political subdivision under section 16.061.
Further, the Foundation does not have the authority to assess the fees billed to and paid by the cotton growers. Instead, the commissioner proposes the applicable assessment, and the growers in the zone vote by referendum whether to approve those assessments-the Foundation merely collects assessments and then uses the funds for eradication efforts. See Tex. Agric. Code § 74.113. Thus, even if we consider the assessments to be an equivalent of taxes, unlike the board in Aguilar , the Foundation lacks the authority to assess them and thus does not satisfy that element of the Guaranty Petroleum analysis. See 609 S.W.2d at 531; see also Lohec v. Galveston Cty. Comm'rs Court , 841 S.W.2d 361, 364 (Tex. 1992) (considering whether county beach park board was state agency and stating, "They lack taxing authority, and we are aware of no cases in which an entity not so authorized was held to be an independent state subdivision, absent express statutory identification as such a political subdivision.").
In our consideration of this case, we looked to other statutes defining a political subdivision. Some examples provided by statute are: counties, cities, municipalities, interstate or state agencies, certain nonprofit water supply corporations, or special districts. See Tex. Water Code §§ 15.602(9), 15.731(4), 16.001(7) ; Tex. Health & Safety Code § 691.021. Further, in the Tort Claims Act, a "governmental unit" is defined to include "a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority." Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). And one section of the government code provides twenty examples, including a county, an incorporated or unincorporated municipality, a public junior college, a public school district, a metropolitan or regional transit authority, an airport authority, a soil and water conservation district, a county road or road utility district, an emergency services or communications district, a public health or hospital authority or district, a mosquito control district, or any other local government or special district of this state. See Tex. Gov't Code § 2254.021(4).
The statutory examples of political subdivisions help inform our decision for several reasons. First, the enumerated entities are all limited geographically rather than existing statewide, as the Foundation does, and are largely independent in their decision-making rather than under the supervision of a state official or agency. They function and act on behalf of the region's population at large and they assess and collect taxes from the population at large. The Foundation, by contrast, only collects assessments from and makes decisions that affect the state's cotton growers. Further, the enumerated entities are run by people either elected by the entire voting population in the area or appointed by such elected officials, whereas the locally elected Foundation's board members are elected by a region's cotton growers, not the entire region's voters.
Finally, we cannot ignore the fact that the legislature was careful to specify that the Foundation is a state agency for purposes *202 of exemption from taxation and indemnification under chapter 104 of the civil practice and remedies code and a governmental unit entitled to governmental immunity under the Tort Claims Act,[12] but was silent as to the possible application of section 16.061. See Tex. Agric. Code § 74.109(d), (f). We must import some significance to the fact that the legislature specified the Foundation's status as to immunity, taxes, and indemnification but did not define it as a political subdivision or other entity within the meaning of section 16.061. See, e.g. , Philadelphia Indem. Ins. Co. v. White , 490 S.W.3d 468, 489 (Tex. 2016) ("The absence of fault-based language in section 92.052(b) is further telling when contrasted with other provisions in chapter 92 incorporating such language."); Brown v. De La Cruz , 156 S.W.3d 560, 568 (Tex. 2004) ("when the Legislature includes a right or remedy in one part of a code and omits it in another, that may be precisely what the Legislature intended"); Metropolitan Life Ins. Co. v. Structured Asset Funding, LLC , 501 S.W.3d 706, 715-16 (Tex. App.-Houston [14th Dist.] 2016, no pet) (court presumed that inclusion of certain transactions in some provisions of relevant act but not others was purposeful and meaningful); St. Agnes Acad. v. Texas Alcoholic Beverage Comm'n , 391 S.W.3d 277, 284 (Tex. App.-Austin 2012, no pet.) ("[N]owhere in the alcoholic beverage code is there an express provision for judicial review of an order granting a permit. In a complex scheme of this type, the omission of such a provision-as contrasted with several provisions authorizing judicial review from the category of decisions involving permit refusals-strongly indicates that the legislature intended to foreclose judicial review from the category of decisions in which a permit is granted.... By specifying so extensively the limitations on judicial review under section 11.67, the legislature has manifested an intent to exclude that which is not included.").
We conclude that the Foundation is not a political subdivision under section 16.061. Therefore, the statute of limitations may be applied to its claims against Veigel. "A cause of action generally accrues at the time when facts come into existence that authorize a claimant to seek a judicial remedy." Mid-South Telecomms. Co. v. Best , 184 S.W.3d 386, 390 (Tex. App.-Austin 2006, no pet.) ; see Murray v. San Jacinto Agency, Inc. , 800 S.W.2d 826, 828 (Tex. 1990). Thus, the Foundation's claims against Veigel accrued at the latest on the dates the default judgments against Veigel Farms were signed-August 10, 2000, and September 29, 2004. The suit against Veigel was filed on August 3, 2010, and was therefore barred by the statute of limitations.
Conclusion
This is a difficult case, and we recognize that there are policy reasons to support a determination that the Foundation should be considered a political subdivision. However, we are bound to follow the supreme court's guidance as to what constitutes a political subdivision and must also be guided by the language chosen by the legislature. See Petco Animal Supplies, Inc. v. Schuster , 144 S.W.3d 554, 565 (Tex. App.-Austin 2004, no pet.) ("As an *203 intermediate appellate court, we are not free to mold Texas law as we see fit but must instead follow the precedents of the Texas Supreme Court unless and until the high court overrules them or the Texas Legislature supersedes them by statute."). Because the Foundation is not a political subdivision, it is not protected by the bar against limitations provided by section 16.061. The Foundation filed its suit against Veigel after limitations ran related to its default judgments against Veigel Farms, and the trial court thus erred in denying Veigel's motion for summary judgment and in granting judgment in favor of the Foundation. We reverse the trial court's orders denying Veigel's motion and granting the Foundation's motion, and we render judgment granting Veigel's motion for summary judgment and dismissing the Foundation's claims against him.

Veigel appears pro se, both here and in the trial court. We hold pro se litigants to the same procedural standards as we do litigants represented by counsel to avoid giving pro se litigants an unfair advantage. See Mansfield State Bank v. Cohn , 573 S.W.2d 181, 184-85 (Tex. 1978). However, we will read the briefs liberally so as to obtain a just, fair and equitable adjudication of the parties' rights. See Sterner v. Marathon Oil Co. , 767 S.W.2d 686, 690 (Tex. 1989).

The Foundation's original petition in this proceeding also named as a defendant Bob Veigel, President and Director of Veigel Farms, but service was never completed on him, he never made an appearance in the case, and he is not a party to this appeal.

Veigel asserted assumption of risk, contributory negligence, estoppel, failure of consideration, payment, release, laches, and waiver related to "the assessment of fees on acres which actually failed prior to the acreage reporting date" and "the release of [the Foundation's] superior right to payment and statutory lien with endorsement(s) of jointly payable crop proceeds check(s) to an inferior lienholder." He asserted the same claims as well as collateral estoppel, failure to mitigate, and limitations as to the Foundation's claims "resulting from otherwise valid unpaid assessments, debts, and/or judgments owed by" Veigel Farms to the Foundation. On appeal, Veigel only discusses limitations, laches, payment, res judicata, and collateral estoppel.

See Tex. Agric. Code §§ 74.101(a)(3) (Foundation acts under commissioner's supervision and control), .1011 (Foundation is supervised by department of agriculture, and commissioner may terminate Foundation by giving forty-five days' written notice and designating successor entity), .105(a), (d) (commissioner shall conduct referendum to determine if area growers want to establish eradication zone; if referendum fails, commissioner shall appoint board representative from area), .108(c), (d) (commissioner must approve board procurement policy and may inspect Foundation's financial records at any time), .113 (commissioner shall conduct referenda on proposed assessments).

See generally Tex. Civ. Prac. & Rem. Code §§ 104.001 -.009 ("State Liability for Conduct of Public Servants").

"Governmental unit" means:
(A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;
(B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;
(C) an emergency service organization; and
(D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.
Id. § 101.001(3).

See generally Tex. Gov't Code §§ 551.001 -.146 (open meetings), 552.001-.353 (public information).

The Foundation has never asserted that it should be considered a part of the department of agriculture or that it should otherwise be considered "the state"-it argues only that it falls within section 16.061 because it is a political subdivision.

Although the trial court did not explicitly state that the Foundation was a political subdivision, because the question involves the pure application of law to undisputed facts, in denying Veigel's motion for summary judgment, the court implicitly determined that the Foundation was a political subdivision not subject to the defense of limitations.

Veigel argues that the statute lists the only entities that may be considered political subdivisions and that because the Foundation is not included, it is not a political subdivision. However, according to the Code Construction Act, " '[i]ncludes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded." Tex. Gov't Code § 311.005(13) ; Sneed v. Webre , 465 S.W.3d 169, 191-92 (Tex. 2015). Thus, the omission of the Foundation from the list in section 16.061 is not determinative of whether it is a political subdivision.

Further, the supreme court in Lewellen noted that although section 74.101 appeared "to contemplate promotion and marketing programs," which might be an improper use of the fees, the evidence showed that, except for a small amount used for overhead, the assessments were spent on eradication efforts. Texas Boll Weevil Eradication Found., Inc. v. Lewellen , 952 S.W.2d 454, 463 (Tex. 1997). Since Lewellen was decided, the language in section 74.101 referred to as possibly allowing for such suspect use of assessment funds was deleted. See Tex. Agric. Code § 74.101.

In its definition of "governmental unit," section 101.001 of the Tort Claims Act includes the state and its agencies, political subdivisions, emergency services organizations, and "any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution." See supra note 6, quoting Tex. Civ. Prac. & Rem. Code § 101.001(3).