# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00290-CV

---

**Evaristo Gabriel Vazquez, Appellant**

**v.**

**Jessica Lynn Bailey, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF HAYS COUNTY
### NO. 16-0582, THE HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

After a protracted six-year divorce proceeding, the trial court entered a Final
Decree of Divorce, which among other things, appointed Evaristo Gabriel Vazquez (Father) and
Jessica Lynn Bailey (Mother) joint managing conservators of their two children, granted Mother
the exclusive right to designate the primary residence of the children, denied Father's request for
reimbursement, and divided the marital estate between Father and Mother. Father now appeals
that divorce decree. For the following reasons, we affirm the decree.

## BACKGROUND

Mother and Father were married on November 29, 2008. The parents had two
minor children, son and daughter, during the marriage, and Father had two now-adult sons from
a previous relationship. Mother ultimately filed for divorce on March 21, 2016, and the initial
proceeding culminated in an associate judge issuing findings and recommendations on January 2,

2018. Father thereafter moved for a new trial, arguing that he did not knowingly waive his right to a de novo hearing, and the trial court granted the motion on May 30, 2018.

A bench trial was then held over eleven nonsequential days spanning from April 15, 2019, through April 19, 2022, during which Father, Mother, and several other witnesses testified.[1] Amongst a myriad of topics and issues, much of the testimony and evidence focused on real property owned by Mother in San Marcos, Texas, that she purchased prior to the marriage and on which Father completed a variety of renovations during the course of their marriage (the "San Marcos Residence"). There was also testimony and evidence addressing two pieces of property intended for Father's adult sons, one property owned by Father prior to the marriage (the "Wimberley Property") and another property purchased in the Canyon Lake area during the marriage (the "Canyon Lake Property"), on both of which Father had completed various improvements during their marriage. Portions of the trial also focused on Mother's retirement account with the Teacher Retirement System of Texas (the "TRS Account"), which was opened prior to their marriage but may have received some contributions or experienced growth during the marriage.

On the last day of the bench trial, the trial court granted the divorce. Relevant to this appeal, the trial court appointed both parents as joint managing conservators, with Mother having the right to establish the children's primary residence; denied Father's reimbursement claim as to community funds expended on the San Marcos Residence; and awarded 100% of the San Marcos Residence and the TRS Account to Mother as part of the division of the marital

---

[1] That extended period included interruptions from scheduling conflicts, the COVID-19 pandemic, and disputes over holding virtual hearings.

estate. The trial court then entered a final decree of divorce consistent with those rulings on May 17, 2022. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's decisions on conservatorship, possession, the award of a reimbursement claim, and the division of the marital estate for abuse of discretion. *See Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988) (division of marital estate); *In re Estate of Baker*, 627 S.W.3d 523, 526–27 (Tex. App.—Waco 2021, no pet.) (reimbursement claims); *Espe v. Castellaw*, No. 03-19-00475-CV, 2021 WL 2021137, at *1 (Tex. App.—Austin May 21, 2021, no pet.) (mem. op.) (conservatorship and possession). "A trial court abuses its discretion if it acts without reference to any guiding rules and principles such that the ruling is arbitrary or unreasonable." *Espe*, 2021 WL 2021137, at *1 (citing *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004)).

The abuse of discretion standard overlaps with traditional sufficiency standards of review in family law cases. *See Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied). Challenges to legal and factual sufficiency do not constitute independent grounds for asserting errors but are instead relevant factors in determining whether the trial court abused its discretion. *See Espe*, 2021 WL 2021137, at *2. "Evidence is legally sufficient when it would enable reasonable and fair-minded people to reach the verdict under review and is factually insufficient only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *A.S. v. Texas Dep't of Fam. & Protective Servs.*, 665 S.W.3d 786, 795 (Tex. App.—Austin 2023, no pet.). A trial court does not abuse its discretion if there is at least some substantive, probative evidence that "exists to support the trial court's decision." *See*

*Espe*, 2021 WL 2021137, at *2 (citing *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.)).

Furthermore, because findings of fact and conclusions of law were not requested or filed, "it is implied that the trial court made all findings necessary to support its judgment." *See Estrada v. Garrett-Estrada*, No. 03-22-00017-CV, 2023 WL 3132552, at *4 (Tex. App.—Austin Apr. 28, 2023, pet. denied) (mem. op.). In this context, we view the evidence in the light most favorable to the trial court's decision, and the judgment must be affirmed if it can be upheld on any legal theory supported by the evidence. *See id.* (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).

## DISCUSSION

In his pro se briefing, Father raises three challenges to the final divorce decree: (1) the appointment of Mother as the joint managing conservator with the right to establish the children's primary residence; (2) the denial of his reimbursement claim; and (3) the award of 100% of the TRS Account to Mother as part of the division of the marital estate.[2] Father also argues that the multi-year time period of the divorce proceeding violated his due process rights. We address each argument in turn.

### *Conservatorship*

In his first issue, Father challenges the appointment of Mother as the joint managing conservator with the right to establish the children's residence. *See* Tex. Fam. Code

---

[2] We construe pro se filings liberally and with patience "so as to obtain a just, fair and equitable adjudication of the parties' rights." *Housing Auth. of City of Austin v. Elbendary*, 581 S.W.3d 488, 491 n.1 (Tex. App.—Austin 2019, no pet.) (quoting *Veigel v. Texas Boll Weevil Eradication Found.*, 549 S.W.3d 193, 195 n.1 (Tex. App.—Austin 2018, no pet.)). "However, pro se litigants must comply with the same rules and standards as those represented by attorneys." *Id.*

§ 153.134(a) (authorizing court to appoint parents as joint managing conservators if appointment in best interest of child), (b) (requiring court to render appointment order containing various provisions, including designating "the conservator who has the exclusive right to determine the primary residence of the child"). The primary consideration for all issues of conservatorship is the best interest of the child. *See* Tex. Fam. Code § 153.002; *see also Chacon v. Gribble*, No. 03-18-00737-CV, 2019 WL 6336184, at *5 (Tex. App.—Austin Nov. 27, 2019, no pet.) (mem. op.). Trial courts have broad discretion in determining what is in the child's best interest, *see Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982), and they may use the non-exhaustive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976), in making that determination. Although a single factor may be adequate in certain cases to support a best interest finding, no single factor is controlling, not all factors apply in every case, and the best interest determination is not limited only to those factors. *Chacon*, 2019 WL 6336184, at *5.

Liberally construing Father's briefing, he contends that Mother should not have been designated joint managing conservator with the right to establish the children's residence because of "unrebutted" evidence of frequent injuries and illnesses suffered by the children while in Mother's care. Father refers to evidence in the record that their son suffered a broken arm, that their daughter suffered various bruises and abrasions to her face and body over several years, that son suffered repeated fungal infections on one of his toes, that the children suffered numerous mosquito bites, and that the children suffered various minor injuries while playing with older students of Mother.[3] But the trial court heard testimony demonstrating that son broke his arm while playing at school, not under Mother's supervision. The trial court also heard

---

[3] Son and daughter were nine years old and four years old, respectively, when the de novo trial started, and they were twelve years old and seven years old, respectively, when the final decree was entered.

Mother's testimony regarding the cause or circumstances of the various bruises, abrasions, and mosquito bites suffered by the children and her explanation that they were "minor" and the type of injuries toddlers and young children experience in their daily activities. Moreover, photographic evidence of the various injuries and illnesses was also admitted. The court was therefore best positioned to observe the witnesses' demeanor and weigh the credibility of their competing testimony in light of the photographic evidence of those injuries and illnesses. *See Coburn v. Moreland*, 433 S.W.3d 809, 823–24 (Tex. App.—Austin 2014, no pet.) ("We, therefore, defer to the trial court's judgment in matters involving factual resolutions and any credibility determinations that may have affected those resolutions."). Father also contends that Mother failed to seek adequate treatment from doctors and failed to adequately feed the children, leading to daughter being chronically underweight and son suffering from constipation. But in addition to Mother's testimony contradicting Father's version of events, written discovery responses from the children's pediatrician that were admitted into evidence stated that, in the pediatrician's professional opinion, neither child was "significantly underweight" nor had "significant issues" with constipation, that the pediatrician had no concerns of neglect, that neither parent is neglectful, and that Father "seems pre-occupied with gathering evidence against [Mother]." *See id.*

In sum, there is some substantive, probative evidence in the record supporting Mother's appointment as the joint managing conservator with the right to designate the children's residence. *See Espe*, 2021 WL 2021137, at *2; *Estrada*, 2023 WL 3132552, at *4. Father has failed to show that the trial court abused its discretion in finding that it was in the children's best interest for Mother to be appointed joint managing conservator with the right to establish the children's residence. We overrule Father's first issue.

6

### *Reimbursement Claim*

In his second issue, Father argues that the trial court erred in denying his request for reimbursement. He contends that he is entitled to reimbursement for the renovations he completed on the San Marcos Residence, which the parties agree is Mother's separate property.

We review a trial court's award of reimbursement for an abuse of discretion. *In re Estate of Baker*, 627 S.W.3d at 526–27; *see also Marin v. Marin*, No. 03-22-00013-CV, 2023 WL 2776296, at *4 (Tex. App.—Austin Apr. 5, 2023, no pet.) (mem. op.). Under Section 3.402 of the Texas Family Code, a spouse may seek reimbursement of funds expended by the marital estate "when one or both spouses use property of one marital estate to confer on the property of another marital estate a benefit which, if not repaid, would result in unjust enrichment to the benefited estate." Tex. Fam. Code § 3.402(a). "The right of reimbursement is not an interest in property or an enforceable debt, per se, but an equitable right which arises upon dissolution of the marriage through death, divorce, or annulment." *Marin*, 2023 WL 2776296, at *5 (quoting *Vallone v. Vallone*, 644 S.W.2d 455, 458–59 (Tex. 1982)). Reimbursement is "not merely a balancing of the ledgers between the marital estates." *Id.* at *4. "The rule of reimbursement is purely an equitable one." *Vallone*, 644 S.W.2d at 458. Trial courts have broad discretion in evaluating a claim for reimbursement, and "[g]reat latitude must be given to the trial court in applying equitable principles to a claim for reimbursement." *Marin*, 2023 WL 2776296, at *4. Father, as the spouse seeking reimbursement, must establish "(1) that a contribution was made by one marital estate to another, (2) that the contribution was reimbursable, and (3) the value of the contribution." *Id.*; *see also* Tex. Fam. Code § 3.402(b).

On appeal, Father focuses on the third element: the value of the contribution. Generally, the value of the benefit conferred for improvements to real property is "measured by

7

the enhancement in the value of the benefited estate's real property that resulted from the improvements." Tex. Fam. Code § 3.402(d)(2). Although Father introduced evidence about the costs of the various renovations to the San Marcos Residence, "evidence of the cost of improvements alone is not sufficient to prove enhanced value." *In re Marriage of McCoy & Els*, 488 S.W.3d 430, 435 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Rather, that "enhancement value" is determined through evidence showing the fair market value of the property in its improved condition at the time of dissolution compared to the fair market value of the property if the improvements had not been made. *Marin*, 2023 WL 2776296, at *5. "Thus, it is not sufficient for the party seeking reimbursement to prove that the value of property has simply increased over time; the party seeking reimbursement must prove that the enhanced value of the property 'was actually due to the renovations' or other improvements." *In re Marriage of McCoy & Els*, 488 S.W.3d at 435 (quoting *Garza v. Garza*, 217 S.W.3d 538, 547 (Tex. App.— San Antonio 2006, no pet.)).

The court did consider evidence of the original value of the San Marcos Residence at the time Mother purchased the property before the marriage ($57,250) and appraisals of the property at the time of dissolution of the marriage ($155,100, $160,000, and $190,000). But those appraisals addressed the fair market value of the improved San Marcos Residence, rather than analyzing the hypothetical fair market value of the San Marcos Residence if the renovations had not taken place. Father argues that Mother conceded the hypothetical value of the San Marcos Residence when she stated at the July 26, 2019 hearing that she believes the San Marcos Residence would be worth "at least $130,000" if it was in the unrenovated condition. However, Mother's statement regarding her opinion on the hypothetical value of the San Marcos Residence occurred in response to a question about the value of the San Marcos

8

Residence "today," that is, the date of the hearing, not the date of the dissolution of the marriage. *See Marin*, 2023 WL 2776296, at *5. Moreover, when asked for the basis of her opinion, Mother explained that there are "very few properties for sale, there's very few, even just empty lots," that she is neither a real-estate agent nor an appraiser, and that she does not own any other real estate. *See In re Marriage of McCoy & Els*, 488 S.W.3d at 436 (explaining that conclusory statements about property value without improvements are not competent evidence when unaccompanied by evidence substantiating factual basis for opinion (citing *DZM, Inc. v. Garren*, 467 S.W.3d 700, 703 (Tex. App.—Houston [14th Dist.] 2015, no pet.))). Father has failed to demonstrate there was sufficient evidence to support his reimbursement claim based on the value of the improvements to the San Marcos Residence under Section 3.402(d)(2)'s "enhancement value" approach, and therefore the trial court did not abuse its discretion in denying the reimbursement claim.[4]

---

[4] Father also at times appears to argue that he is separately entitled to reimbursement for the value of his "time, toil, talent, or effort" in renovating the San Marcos Residence. The value of a spouse's contribution may also be "measured by the value of the time, toil, talent, or effort beyond that which was reasonably necessary to manage and preserve the [other] spouse's separate property" when the reimbursement-seeking spouse uses their "time, toil, talent, or effort to enhance" the separate property. Tex. Fam. Code § 3.402(d)(3). However, Father has not directed us to any example, nor have we found any, of this provision being used as an alternative for seeking reimbursement for improvements to real property. *See, e.g.*, *In re Marriage of Moore*, No. 12-22-00286-CV, 2023 WL 3369399, at *10 (Tex. App.—Tyler May 10, 2023, no pet.) (mem. op.) (explaining reimbursement claim arises out of spouse's time, toil, talent, and effort "from a business under the spouse's control and direction"); *In re Marriage of Slagle*, No. 14-16-00113-CV, 2018 WL 2306736, at *4 (Tex. App.—Houston [14th Dist.] May 22, 2018, pet. denied) (mem. op.) (describing this method of determining value of contribution as relating to inadequate compensation "for a business entity under the control and direction of that spouse"); *see also In re Marriage of McCoy & Els*, 488 S.W.3d 430, 435 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Nor is evidence of the cost of improvements alone sufficient to prove enhanced value.").

Assuming without deciding that Father could seek reimbursement for the value of his renovations to the San Marcos Residence under this alternative valuation approach, we cannot

Furthermore, the trial court also heard testimony and evidence from both Father and Mother that, during the marriage, Father purchased the Canyon Lake Property for one of Father's adult sons, that Father made improvements to both the Wimberley Property (intended for his other adult son) and the Canyon Lake Property, and that Mother and Father provided various types of financial support to Father's two adult sons. *See* Tex. Fam. Code § 3.402(f) (directing court, if appropriate, to offset competing reimbursement claims). The trial court also heard testimony that the community estate took depreciation on the San Marcos Residence to offset its tax burden during several years when the property was leased to third parties. *See id.* § 3.402(g)(3) (allowing for reimbursement claim to be offset by "any reduction in the amount of any income tax obligation of the conferring estate by virtue of the conferring estate claiming tax-deductible items relating to the property of the benefited estate, such as depreciation, interest, taxes, maintenance, or other deductible payments"). Thus, even assuming Father was entitled to a reimbursement claim, the trial court could have considered that other evidence and determined that any reimbursement claim for Father should have been completely offset. *See id.* § 3.402(f).

Taken together, we conclude that the trial court did not abuse its discretion in denying Father's reimbursement claim. *See Marin*, 2023 WL 2776296, at *5. We overrule Father's second issue.

---

say the trial court abused its discretion. Father did testify regarding the cost of materials and labor for various renovations undertaken on the San Marcos Residence, although this testimony often confused the cost of those past renovations with what they would cost in the present (or what Father would have charged a third party for similar renovations). But the trial court also reasonably could have credited competing testimony from Mother that several of the renovations were completed either prior to the marriage or were done by Mother, that numerous repairs arose because of the poor workmanship of Father's renovations, and that renovations were completed without the necessary permits or inspections.

10

*Division of Marital Estate*

In his third issue, Father argues that the trial court erred in denying his request for either half of the entire TRS Account or half of the community portion of the TRS Account.

"In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code § 7.001. A trial court has broad discretion in making the division of the marital estate, and we review that division for an abuse of discretion. *See Cyree v. Cyree*, No. 03-21-00319-CV, 2022 WL 17835215, at *3 (Tex. App.—Austin Dec. 22, 2022, no pet.) (mem. op.); *see also Penick*, 783 S.W.2d at 198. We presume the trial court exercised this discretion properly, and the division must be manifestly unfair to constitute an abuse of discretion. *See Cyree*, 2022 WL 17835215, at *3 (citing *Ashraf v. Ashraf*, No. 03-11-00467-CV, 2012 WL 1948347, at *7 (Tex. App.—Austin May 24, 2012, no pet.) (mem. op.) and *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.)). Appellant therefore bears the burden of showing the division was "so disproportionate, and thus unfair, that it constitutes an abuse of discretion." *See id.* (quoting *O'Carolan v. Hopper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.)); *see also Murff v. Murff*, 615 S.W.2d 696, 700 (Tex. 1981) (observing that "[m]athematical precision in dividing property in a divorce is usually not possible" and that "[w]ide latitude and discretion rests in these trial courts and that discretion should only be disturbed in the case of clear abuse").

Father does not challenge that the overall division of the marital estate is just and right but instead argues that he should have received half of the community property contained in

the TRS Account. Even assuming the entire TRS Account was community property,[5] neither specific community property, nor all of the community property, need "be equally divided." *Murff*, 615 S.W.2d at 699; *see also Delancey v. Delancey*, No. 03-10-00240-CV, 2011 WL 677401, at *6 (Tex. App.—Austin Feb. 24, 2011, no pet.) (mem. op.) ("A just and right division of the couple's community property need not be an equal split."). For example, Father was awarded 100% of the Canyon Lake Property,[6] which was purchased during the marriage, in the division of marital estate. Although Mother may have received the entire TRS Account in the division of marital estate, Father has failed to establish that the overall division of the marital estate was so disproportionate as to be manifestly unfair (or that the TRS Account somehow constituted such an overwhelming portion of the marital estate to make any division of the remaining property so disproportionate as to be manifestly unfair). *See* Tex. Fam. Code § 7.001; *see also Cyree*, 2022 WL 17835215, at *3. We overrule Father's third issue.

***Due Process Challenge***

In his final issue, Father contends that holding the de novo trial over several, disjointed days spanning an approximately three-year period violated his due process rights.

As an initial matter, Father did not raise this objection before the trial court but instead has raised it for the first time on appeal. *See* Tex. R. App. P. 33.1(a); *cf. In re L.M.I.*,

---

[5] Mother testified at trial that her TRS Account had approximately $18,000 in funds at the time she and Father met, and a value of $20,173 at the time of the divorce. She would later testify that the funds in the account had not grown because she was no longer a teacher in the school district and therefore was not adding funds to the account and that the TRS Account was instead "just gaining interest."

[6] The Canyon Lake property was purchased for approximately $5,500 during the marriage, and conflicting testimony valued the Canyon Lake property between $8,500 and $30,000 after numerous improvements were made to the property.

119 S.W.3d 707, 711 (Tex. 2003) (concluding due process challenge in termination proceeding not preserved when raised for first time on appeal). Even if Father had preserved this issue for appellate review, Father's due process challenge has been inadequately briefed. Father contends that the three-year period was per se unreasonable,[7] but he has failed to provide any meaningful analysis or cite relevant authority beyond a reference to the Texas Constitution. *See LMP Austin English Aire, LLC through Lafayette English Partner, LLC v. Lafayette English Apartments, LP*, 654 S.W.3d 265, 291 (Tex. App.—Austin 2022, no pet.) ("When, as here, a party fails to properly cite to the record and omits meaningful argument, appellate courts may consider the issue waived due to inadequate briefing."); *Cruz v. Van Sickle*, 452 S.W.3d 503, 512–13 (Tex. App.—Dallas 2014, pet. Struck) (concluding issue waived for inadequate briefing because due process claim "does nothing more than reference certain constitutional provisions" without meaningful analysis); *see also Housing Auth. of City of Austin v. Elbendary*, 581 S.W.3d 488, 491 n.1 (Tex. App.—Austin 2019, no pet.) ("[P]ro se litigants must comply with the same rules and standards as those represented by attorneys."). The only other authority referenced by Father is the one-year deadline for commencing trial on the merits under Section 263.401 of the Texas Family Code, but that deadline only applies to termination proceedings and is inapplicable here. *See* Tex. Fam. Code § 263.401(a) (dismissing automatically, with certain limited exceptions, termination suit if trial on merits is not commenced within one year of Texas Department of

---

[7] Although Father contends in his briefing that the extended time period was the sole fault of the trial court, the record belies that assertion. For example, at the December 8, 2020 hearing, the parties discussed how Mother's counsel had attempted to set a hearing throughout the previous months since the COVID-19 pandemic began affecting court operations but that Father opposed any virtual setting. Only after the trial court denied Father's request for in-person hearings at the December 2020 hearing did the parties resume the bench-trial dates in the subsequent months.

Family and Protective Services being appointed temporary managing conservator).  We overrule

Father's final issue.

## CONCLUSION

For these reasons, we affirm the divorce decree.[8]

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Affirmed

Filed:  April 25, 2024

---

[8]  We also dismiss as moot Bailey's motion to dismiss appeal, which sought to dismiss Father's appeal on the ground that he waived his appellate issues by failing to comply with the briefing rules.  *See* Tex. R. App. P. 38.1.

14