# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00475-CV

**Donald Rhodes, Appellant**

**v.**

**Laura Pena Tamayo, Appellee**

### FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 20-2205-F425, THE HONORABLE BETSY F. LAMBETH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Donald Rhodes, proceeding pro se, appeals from the district court's final decree of divorce. In eight points of error on appeal, Rhodes asserts that (1) the district court's temporary orders were vague and denied him due process; (2) the district court was biased against him; (3) the district court abused its discretion by denying Rhodes a continuance; and (4) the district court abused its discretion by ordering Rhodes to pay a portion of his ex-wife's attorney's fees.[1] We will affirm the divorce decree.

---

[1] Rhodes's brief is four pages long, contains no more than two or three sentences of "analysis" for each of his points of error, and fails to cite to the record or any authorities for any of his points. Although we are to "construe pro se filings liberally and with patience 'so as to obtain a just, fair and equitable adjudication of the parties' rights,'" *Housing Auth. of City of Austin v. Elbendary*, 581 S.W.3d 488, 491 n.1 (Tex. App.—Austin 2019, no pet.) (quoting *Veigel v. Texas Boll Weevil Eradication Found.*, 549 S.W.3d 193, 195 n.1 (Tex. App.—Austin 2018, no pet.)), "pro se litigants must comply with the same rules and standards as those represented by attorneys," *id.* (citing *Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005)). Rhodes's brief fails to comply with the briefing rules. *See* Tex. R. App. P. 38.1. Nevertheless, we will address Rhodes's points of error to the extent we are able to discern them. Additionally, five of

## BACKGROUND

Rhodes and appellee Laura Pena Tamayo were married in 2007 and had two children together, A.R. (Ann), born in 2010, and S.R. (Sally), born in 2017.[2] The parents separated the same year Sally was born. In 2018, the Office of the Attorney General (OAG) filed a suit affecting the parent-child relationship involving the parents and their children. That case resulted in an agreed final order establishing the terms of the parents' conservatorship, possession and access, and support of the children. The order appointed Tamayo sole managing conservator of the children and Rhodes possessory conservator. Rhodes's possession and access was to be agreed upon by the parties, or in the alternative, he was to have supervised visits for four hours on any day in which he was in the same geographic location as the children, so long as he provided seven days' notice to Tamayo. At the time the order was entered, Rhodes resided in Iowa and Tamayo resided in Williamson County.[3]

In 2020, Rhodes filed a petition for divorce from Tamayo, and the parties agreed to consolidate the divorce case with the OAG case. Rhodes was represented by counsel at the beginning of the case through 2021. During the divorce proceedings, the parties attended a temporary-orders hearing, at which they announced that they had made several agreements involving the children, both of whom required therapy for autism and other issues. Among other agreements, the parties agreed that Rhodes would "choose three therapists that accept Tricare

---

Rhodes's points relate to his claim that the district court was biased against him. For brevity, we have consolidated those arguments into a single issue. *See* Tex. R. App. P. 47.1.

[2] For the children's privacy, we will refer to them by aliases. *See* Tex. R. App. P. 9.9(a)(3).

[3] Rhodes now resides in Kentucky.

insurance in order to effectuate therapeutic visitation with the children"; that Rhodes would "submit those three choices" to Tamayo, who would select one of the three; and that the parties would follow the recommendations of the therapist regarding possession and access until further order of the court. Rhodes agreed that he would be "100 percent responsible" for the costs associated with that therapy, including any uninsured medical costs. During the hearing, the district court rendered judgment on the parties' agreement and made the agreement an order of the court.

The only disputed issues at the temporary-orders hearing were whether to modify the conservatorship and whether Rhodes would be limited to supervised visitation of the children. Rhodes and Tamayo testified regarding those issues. Rhodes testified that he had last visited the children in person in 2018. Rhodes had spoken with Ann over the phone "maybe seven or eight times" since then. Rhodes acknowledged that in 2018, he had sent several vulgar emails and text messages to Lis Schafer, Tamayo's adopted mother and the person who was supervising Rhodes's phone communication with the children. In the messages, copies of which were admitted into evidence, Rhodes called Schafer names such as "fucking liberal nazi" and "shitty ass hag" and demanded that she allow him to call Ann.

Tamayo testified that Rhodes did not make any attempt to contact the children in 2019. Then, in 2020, Rhodes began telling Tamayo in emails that he "felt nothing" for one of the children, that he would "ask the courts to disown [the children] legally," and that he wanted to relinquish his parental rights to the children. Rhodes acknowledged sending these emails, which were admitted into evidence. At the conclusion of the hearing, the district court ordered that Tamayo would continue as sole managing conservator of the children and that Rhodes would be allowed some unsupervised visits with the children.

3

The case proceeded to a final trial on the merits in early 2022, at which point Rhodes was no longer represented by counsel. During trial, Rhodes agreed that the provisions contained in the temporary orders regarding possession and access and therapy sessions would be incorporated into the final order, except for the provision requiring Rhodes to pay for the therapy sessions, which Rhodes contested. Rhodes agreed that Tamayo would remain sole managing conservator of the children and that he would remain possessory conservator.

Tamayo testified that Rhodes had not visited the children in person since June 2018. Tamayo testified that both children continued to require therapy and that her total monthly income was $1,388, which was composed of $692 from the children's Social-Security disability payments and $696 that she received from Rhodes's Veterans' Administration (VA) military-disability payments. She explained that the latter amount would decrease by approximately $200 per month following her divorce from Rhodes.

Rhodes testified that his monthly income was approximately $3,700 per month, including $3,050 from the VA and $650 from Social Security. Rhodes acknowledged that since April 2021, he had not paid any money for the children's therapy, despite the orders requiring him to do so.

The district court granted the divorce and rendered judgment on the parties' agreements regarding conservatorship and possession and access. The court made final the parties' previous agreement that Father pay for therapy as a condition to possession and access. The court additionally ordered that Father pay a portion of Tamayo's attorney's fees. This appeal followed.

4

**Due Process**

In his first point of error, Rhodes asserts that at the beginning of the case, the district court "gave [him] supervised visitation of the children with very vague temp[orary] court orders" that denied him due process.[4] However, the entry of a final order supersedes any temporary orders and renders moot any complaints about the temporary orders. *See Vara v. Vara*, 645 S.W.3d 818, 823 (Tex. App.—El Paso 2022, pet. denied); *Mauldin v. Clements*, 428 S.W.3d 247, 261–62 (Tex. App.–Houston [1st Dist.] 2014, no pet.); *see also* Tex. Fam. Code § 105.001(e) (providing that temporary orders made "for the safety and welfare of the child" are not subject to appeal).

We overrule Rhodes's first point of error.

**Judicial bias**

In his second, third, fourth, fifth, and eighth points of error, Rhodes complains of judicial bias. He asserts that the district court demonstrated bias against him by "shrugging off" Tamayo's violations of the temporary orders, by allowing Tamayo to "slander" him during her testimony without allowing him to ask her certain questions on cross-examination, by conditioning his possession and access to the children on his payment for therapy, and by "look[ing] down and talk[ing] down to [Rhodes] with a blatant attitude of disrespect and disregard."

---

[4] Rhodes claims that the district court made a determination at the temporary-orders hearing that he was denied due process. We have reviewed the record and found no such determination.

5

"All parties have a right to a fair and impartial trial before a neutral judge." *Ellason v. Ellason*, 162 S.W.3d 883, 887 (Tex. App.—Dallas 2005, no pet.) (citing *Markowitz v. Markowitz*, 118 S.W.3d 82, 86 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). "In the absence of a clear showing to the contrary, we will presume the trial judge was a neutral and detached officer." *In re K.L.R.*, 162 S.W.3d 291, 312 (Tex. App.—Tyler 2005, no pet.). During trial, "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias or partiality. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). Moreover, "'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion,' and opinions the judge forms during a trial do not necessitate recusal 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (quoting *Liteky*, 510 U.S. at 555). "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* (quoting *Liteky*, 510 U.S. at 555). "Further, a trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time." *Id.* at 241; *see also* Tex. R. Evid. 611(a) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."). "In short, a trial court has the inherent power to control the disposition of cases 'with economy of time and effort for itself, for counsel, and for litigants.'" *Dow Chemical Co.*, 46 S.W.3d at 240 (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)).

We have reviewed the entire record and found no evidence of bias or partiality by the district court. At both the temporary-orders hearing and at trial, the court allowed both Rhodes and Tamayo to testify and fully present their cases to the court, and the court took care at both proceedings to ensure that the agreed orders were satisfactory to each party before rendering judgment on them. Also, there is nothing in the record to indicate that the district court treated Rhodes with "disrespect" or "disregard" as he claims. To the contrary, the district court asked each party at the conclusion of trial if they believed the court had listened to them "respectfully and with dignity." Both Rhodes and Tamayo answered, "Yes," and the record reflects that the district court did so.

Additionally, we cannot conclude that the district court showed partiality toward Tamayo. For example, at the conclusion of the temporary-orders hearing, the district court found in favor of Rhodes's request to have some unsupervised visits with the children, despite Tamayo arguing that unsupervised visitation should not be allowed. The district court made clear in its ruling that Tamayo's evidence did not rise to the level of "where the Court is comfortable restricting that visitation to supervised only." This is more evidence that the district court was not biased against Rhodes.

As for the district court's evidentiary rulings, the district court excluded as irrelevant some questions that Rhodes sought to ask Tamayo on cross-examination regarding their marital history and conflict. Excluding such questions does not rise to the level of showing any bias or partiality on the part of the district court, particularly considering that the parties had already agreed that Tamayo would remain sole managing conservator of the children.

Similarly, we cannot conclude that the district court demonstrated bias against Rhodes by conditioning his possession and access to the children on his paying for therapy.

7

Rhodes had previously agreed to pay for therapy, and the evidence at trial showed that Rhodes had more than twice the monthly income as Tamayo. Thus, rather than showing bias, the district court's decision demonstrated conformity to the previous agreement between the parties and reflected the financial reality that Rhodes was in a better position than Tamayo to pay for therapy. We cannot conclude that this or any other ruling by the district court demonstrated bias.

Having found no evidence that the district court was biased against Rhodes, we overrule Rhodes's second, third, fourth, fifth, and eighth issues.

## Continuance

At the beginning of trial in late March 2022, Rhodes moved for a continuance so that he could have "time to hire" a new attorney. His previous attorney had withdrawn in December 2021. The district court denied the motion, noting that Rhodes had "had almost four months to hire a new attorney" and that the divorce proceedings had been pending for over 560 days, making it "a very old case." In his sixth issue, Rhodes asserts that the district court abused its discretion by denying his motion for continuance.

We will not disturb a trial court's order denying a motion for continuance unless the trial court has committed a clear abuse of discretion. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002) (citing *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986)). "A trial court 'abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" *Id.* (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)). "In exercising its discretion over whether to grant or deny a continuance due to the withdrawal of counsel, a trial court may

8

consider the entire procedural history of a case." *In re Harrison*, 557 S.W.3d 99, 140 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

Here, Rhodes's attorney withdrew in December 2021. Rhodes did not file his motion for continuance until March 18, 2022, four days and two business days before trial was scheduled to begin. At that time, the case had been pending for 560 days. Given the length of time the case had been pending and the length of time Rhodes already had to hire new counsel, we cannot conclude on this record that the district court abused its discretion by denying Rhodes's motion for continuance.

We overrule Rhodes's sixth issue.

**Attorney's fees**

In his seventh issue, Rhodes asserts that the district court abused its discretion by ordering him to pay a portion of Tamayo's attorney's fees. He claims that this was unfair to him.

"Texas follows the American rule on attorney's fees, which provides that, generally, 'a party may not recover attorney's fees unless authorized by statute or contract.'" *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 453 n.4 (Tex. 2016) (quoting *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 915 (Tex. 2015)). "When fee-shifting is authorized, the party seeking to recover those fees bears the burden of establishing the fees are reasonable and necessary." *In re National Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017) (orig. proceeding).

"In a suit for dissolution of a marriage, the court may award reasonable attorney's fees and expenses." Tex. Fam. Code § 6.708(c). Additionally, "in a divorce suit, the trial court has the equitable power to award either spouse attorney's fees as a part of the just and right

9

division of the marital estate." *Mandell v. Mandell*, 310 S.W.3d 531, 541 (Tex. App.—Fort Worth 2010, pet. denied). We review such an award for abuse of discretion. *See Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). To support an award of attorney's fees in this context, evidence should be presented on the "hours spent on the case, the nature of preparation, complexity of the case, experience of the attorney, and the prevailing hourly rates" in the community. *Hardin v. Hardin*, 161 S.W.3d 14, 24 (Tex. App.—Houston [14th Dist.] 2004, no pet.). "The trial court does not need to hear evidence on each factor but can 'look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties.'" *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 387 (Tex. App.—Dallas 2013, no pet.) (quoting *Hagedorn v. Tisdale*, 73 S.W.3d 341, 353 (Tex. App.—Amarillo 2002, no pet.)).

Tamayo's attorney, Lori Watson, testified that she has been practicing law for twenty-five years and that she bills at the rate of $350 per hour, which she testified was "the customary rate for an attorney that only practices family law as long as [she] ha[s]." Watson explained that her firm was retained when the divorce was filed in September 2020, that she filed an answer in October 2020, exchanged sworn inventories and documents with Rhodes's attorney in November 2020, received discovery and an amended petition for custody, sent discovery, and had "been through the whole ringer with responding to discovery, objecting to it, reviewing what they sent over." She also "participated in a full-day mediation . . . in an effort to resolve the issues for temporary orders" and then, shortly after that, attended the temporary-orders hearing that lasted approximately five hours.

Watson also offered an invoice into evidence "that detail[ed] everything that we've done in this case, including preparing for trial," although the invoice did not include the

attorney's fees incurred from attending the trial. The invoice included the services that were performed by Watson, when they were performed, and the amount of time required to perform each service. In total, the invoice showed that Tamayo had incurred approximately $17,000 in legal fees during the divorce proceedings, not including the trial itself. The amount Rhodes had incurred in legal fees was disputed, although there was evidence presented that he had paid approximately $5,000 to his attorney before the attorney had withdrawn.

Tamayo requested that the district court order Rhodes to pay $6,000 of her attorney's fees to equalize the division of the marital estate, and the district court awarded that amount of attorney's fees to Tamayo. On this record, we cannot conclude that the district court abused its discretion by doing so. The testimony of Watson, combined with the invoice showing the attorney's fees incurred by Tamayo, provided sufficient evidence from which the district court could conclude that the attorney's fees were reasonable and necessary, and we find no abuse of discretion in the district court's awarding $6,000 of the $17,000 total amount of attorney's fees to Tamayo as part of the just and right division of the marital estate.

We overrule Rhodes's seventh issue.

## CONCLUSION

We affirm the divorce decree.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed: May 31, 2024

11